FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
*2:25 pm, Nov 09, 2018*
JEFFREY P. COLWELL, CLERK

In

## The court of record of the House of Nelson,

## Federal District Court of Colorado, Republic of Colorado

## Special term

## at

### Federal District Courthouse, District of Colorado

| | |
|---|---|
| Plaintiff<br>Brett Andrew: House of Nelson<br>Vs.<br>Defendant<br>Keri Yoder, a woman<br><br>------------------------------------------- | ) <br>) Case Number:<br>) SUPERIOR COURT OF RECORD<br>)<br>) -------------------------------------------------------<br>)<br>)<br>) CLAIM AND<br>) ACTION OF TRESPASS,<br>)<br>)<br>) (Verified)<br>) (Attested)<br>) (Sealed)<br>)<br>)<br>)<br>)<br>) |

**ACTION OF TRESPASS:**

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

NOV -9 2018

JEFFREY P. COLWELL
CLERK

Page 1 of 14

## DECLARATION:

### VENUE

1.  All events described herein and all matters relating thereto occurred on unincorporated land in the county named or known as Gunnison in the Republic named or known as the State of Colorado, and there for all actions herein shall proceed, <u>by necessity</u>, according to the course of the common law in a court of record in the State of Colorado. See the law of the case, section: THE COURT, and THE RULES OF THIS COURT ARE AS FOLLOWS, which are included by reference as if fully stated herein.

### LAW OF THE CASE

2.  The law of the case is hereby decreed: THE LAW OF THIS CASE: Attachment "A" is incorporated by reference as though fully stated herein, and applies to all causes of action and all declarations at law in this court of record at all times: At no point or time shall these actions, in this court of record, be subject to the following for any reason: principals of equity, maritime admiralty, ecclesiastical, or military jurisdiction, practice, rules, appeals or decisions save what the lawful tribunal of this court of record shall deem appropriate as stated in THE LAW OF THIS CASE: Attachment "A".

### Court Fees:

3.  It is the <u>birthright</u> of every American to hold a court of record as protected by the federal constitution and, pursuant to the Magna Carta, "no man can be denied *his* court," therefore this case shall continue without fee based on controlling law and restriction by the Federal Constitution:

"The state cannot diminish rights of the people." Hurtado v. People of the State of California, 110 U.S. 516.

"a state may not impose a charge for the enjoyment of a right as granted by the Federal Constitution." Murdock v. Pennsylvania 319 U. S. 105 (1943)

"If the state converts a liberty into a privilege the citizen can engage in the right with impunity." Shuttlesworth v Birmingham , 373 USs 262

"Where rights secured by the Constitution are involved, there can be no rule-making or legislation which would abrogate them." Miranda v. Arizona 384 U.S. 436, 491.

## Commencement, for all actions:

3.    COMES NOW Brett Andrew: House of Nelson, who is at all times mentioned in the following declarations and actions at law, one of the people of Colorado, an American citizen, having come of full age, having been found to be living, competent to give the testimony stated herein, (hereinafter "Plaintiff") and in this court of record, (hereinafter, "Superior Court") comes upon an action of trespass, trespass on the case, against Keri Yoder, a woman;, (hereinafter "Defendant") based off of action in court (hereinafter "Inferior Court"), and calls upon her to answer Plaintiff in these said actions in the Superior Court to wit:

## Statement of cause for the action of trespass and trespass on the case:

4. This is an action and claim of trespass, and trespass on the case,  in a court of record, under the common law, to redress the deprivation of a custom or usage, unalienable right, privilege and immunity secured to Plaintiff by the First, Fourth,

Sixth, Seventh, Ninth, and Tenth articles of the bill of rights, as Amendments to the Constitution for the united States of America, known as said constitution's bill of rights, the expatriation act, and all other rights and immunities that a people of the several united republics of America possess under the common law; all of which the Plaintiff is and was protected by, at all times mentioned, in all causes of action stated herein, and furthermore the jurisdiction of this court is invoked upon the same. Plaintiff seeks an order, judgment and execution from the Superior Court, finding and declaring, that the Defendant who was within the inferior court have exceeded her jurisdiction regarding Plaintiff's substantive rights and seeks a judgment from the Superior Court for the damages stated herein as a result of the injuries caused by the Counter Defendants for the harm they have caused the Counter Plaintiff in excess of said jurisdiction. See Attachment "A" the law of the case, for all of the law referenced herein, the same is incorporated by reference as if fully stated herein.

## Statement of Facts:

5. Plaintiff now states the following facts regarding the events of July twenty fifth in the year Two Thousand and Eighteen, and after, and declares the same in these causes of action to the best of his knowledge and recollection to wit:

6. At all times mentioned herein Plaintiff was and is one of the people of Colorado, and an American Citizen.

7. At all times mentioned herein Plaintiff is and was domiciled on private land, County of Gunnison or County of Alamosa, republic of Colorado.

8. At all times mentioned herein Plaintiff has been found to be living and has come of full age.

9. At all times mentioned herein Plaintiff was and is a free man.

10. At all times mentioned herein Plaintiff was and is the donor, grantor, settlor, sole lawful executor, and sole lawful Heir of both the Brett Andrew Nelson legal estate and the Brett A. Nelson trust.

11. The Defendant has been appointed as trustee of Brett Andrew Nelson and Brett A. Nelson.

12. Defendant was served paperwork assigning her as trustee through certified mail on May 24, 2018.

13. On May 25, 2018 Defendant verified that she had received the paperwork.

14. Plaintiff, did not sign the birth certificate contract of Bryce Andrew Nelson. on nor after December fourth, two thousand and fourteen and has therefore never relinquished, nor waved, nor abandoned any rights over said infant child.

15. Plaintiff has claimed all rights and authorities over Bryce Andrew Nelson on the public record and on the record of two superior court of records where no return was presented in opposition to his claim.

16. Plaintiff was unaware of the contract that the mother of said child, Rosana Fonseca-Elias, signed with the hospital wherein he was born, disavows the said contract and all other contracts, and pledges of the same nature nunc pro tunc, and NOW again makes claim as the sole lawful parent and guardian of infant named or known as Bryce Andrew Nelson, to same, until the child comes of age and is able to handle his own

affairs.

17. Bryce Andrew Nelson was abandoned by his mother at Gunnison Valley Hospital by signing and entering into a contract commonly known as the Birth Certificate contract.

18. Plaintiff now states the following facts regarding the events of July twenty-fifth in the year Two Thousand and Eighteen, and after, and declares the same in these causes of action to the best of his knowledge and recollection to wit:

19. David Westfall, the former judge of the inferior court case 15DR30, filed his oath and bond January 10, after the commencement of his term January 1.

20. David Westfall presided (Herein "Westfall").

21. The inferior equity court lacked capacity as Westfall did not file his oath and bond to office before the commencement of his term.

22. Westfall's position was "Vacant."

23. Plaintiff challenged jurisdiction and standing based on Counter Defendant Elias' illegal status. Westfall mocked that Counter plaintiffs stance was "patriotic" despite the laws presented to him.

24. Westfall stated on record "*If you had an attorney working on this, I'd be a bit more interested in it,*"

25. After his statement, Westfall continued to preside.

26. Westfall was disqualified at the demand of Plaintiff from the case 2015DR30.

27. Defendant Keri Yoder presided.

28. On February 2, 2018, unbeknownst to Counter Plaintiff, defendant, while impersonating a judge, set a hearing based off of an emergency motion for February fifteenth, 2018.

29. Clerk Melissa Wolf sent the notice of the hearing to the wrong address by her error as the correct address was on file and stated so directly to Counter Plaintiff on February 16, 2018.

30. On February 8 at precisely 8:04 AM Counter Plaintiff called the office of the court clerk in Gunnison, Colorado run by Betsey Nesbitt to inquire about the hearing.

31. Counter Plaintiff was told by the office of the clerk of court run by Betsey Nesbitt that the only thing in the file was his response to the motion which had been filed February 5th.

32. On February fifteenth at approximately 7:30AM Plaintiff opened an email from Counter Defendants attorney stating the witnesses for the hearing that day.

33. Plaintiff called the court to inquire about the hearing as he had no prior knowledge of said hearing.

34. Plaintiff was told that the clerks office had erred when he had called on February 8, 2018 wherein Counter Plaintiff inquired as to if there was a hearing and was told there was not. Plaintiff was then told that the hearing for the 15th had been set by Defendant on February 2nd.

35. Plaintiff notified the court that he had not received meaningful notice both verbally and in writing.

36. Defendant held a hearing, made findings and orders with knowledge that Plaintiff had not had meaningful notice.

37. Defendant set the record that Plaintiffs notice had been sent to the wrong address.

38. Plaintiff filed motion to vacate the void orders of Westfall and Defendant under rule 60(b).

39. The inferior court denied the properly filed motions to vacate void orders.

40. On July 27, 2018 the superior court of record in case 2018CV6, counter action to 15DR30, found that Brett Andrew Nelson had full rights to his child, that defendant acted in treason and that the inferior court lacked capacity, authority and jurisdiction. (see attachment "B")

41. The superior court of record in case 2108CV6 found that defendant had denied Plaintiff due process when she did not provide meaningful notice of the hearing where she took Plaintiffs son from his care.

42. Plaintiff was denied his right to see his child for seven months by the defendant where the court did not have capacity, jurisdiction nor authority while she was impersonating a judge.

43. Defendant still claims false judicial authority in 15DR30;

44. Defendant ignored rulings from the court of record in consolidation and the superior court of records findings.

45. The deprivation of rights stems from the unlawful administration of the estate of the Plaintiff and failure to satisfy livery of siesen as stated and demanded by plaintiff, the lawful heir, recorded onto the public record and served on the party.

**Count one Trespass:**

**SPECIFICS:**

**Statement of fact:**

**Conclusion regarding the first count of trespass:**

Defendant deprived plaintiff his substantive right to see and raise his child where she did not have capacity, jurisdiction nor authority. Plaintiff has the unalienable right to see and raise his child and that cannot be deprived from him without due process of law. Defendant, while impersonating a judge, did not provide due process and therefore had no capacity, authority nor jurisdiction to deny plaintiff his child. Within this action Defendant forced unwanted medical upon the child. (see the law of the case, right to refuse medical): The liberty interest at issue in this case -- the interest of a parent in the care, custody, and control of his child during his parenting time -- is perhaps the oldest of the fundamental liberty interests recognized by the United States Supreme Court and Colorado Courts, 406 U.S. 205, 232, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition"); *Quilloin v. Walcott*, 434 U.S. 246, 255, 54 L. Ed. 2d 511; 98 S. Ct. 549 (1978)

"We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"; *Parham v. J. R.*, 442 U.S. 584, 602, 61 L. Ed. 2d 101, 99 S. Ct. 2493 (1979)

"Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed thatcourse"); *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982)

discussing "the fundamental liberty interest of natural parents in the care, custody, and management of their child"); *Glucksberg, supra*, at 720 ("In a long line of cases, we have held

that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the right . . . to direct the education and upbringing of one's children" (*citing Meyer and Pierce*)). In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children, including medical treatment decisions (*Troxel v. Granville*, 530 U.S. 57, 65-67 ( U.S. , 2000).

More than 75 years ago, the Court in *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 67 L. Ed. 1042, 43 S. Ct. 625 (1923), held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, the Court in *Pierce v. Society of Sisters*, 268 U.S. 510, 534-535, 69 L. Ed. 1070, 45 S. Ct. 571 (1925),  again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." The Court explained in *Pierce* that "the child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." 268 U.S. at 535. The Court returned to the subject in *Prince v. Massachusetts*, 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children, stating "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." 321 U.S. at 166.  In subsequent cases also, the Court has recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *See, e.g., Stanley v. Illinois,* 405 U.S. 645, 651, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972)

"It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'comes to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements'";*Wisconsin v. Yoder*"So long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children" (Troxel v. Granville, 530 U.S. 57, 68-69 ( U.S. , 2000) citing Flores, 507 U.S. at 304). Any infringement of the fundamental right of parents to make difficult decisions concerning the care, custody, and control of their children is to be subjected to strict scrutiny Williams v. Williams, 256 Va. 19, 21, 501 S.E.2d 417, 418 (1998)(compelling state interest required before authorizing state interference with a parent's right to make decisions regarding the child) Troxel v. Granville, 530 U.S. 57, 80 (U.S., 2000)(Thomas, J. concurring)

46. The Superior Court of Record in case 18CV6 has found that defendant lacked

authority, capacity and jurisdiction. The court of record is the final decision in law

and its decisions cannot be reversed. A district judge has no authority to ignore the

decisions of a court of record and in doing so has violated law and oath.

47. For these aforesaid reasons the inferior court lacks jurisdiction and must grant relief found in DEMAND FOR RELIEF AND JUDGMENT.

## PLEDGE

48. The Plaintiff in common pledges to prosecute, the Defendant at law in this court of record until all matters and actions are concluded to judgment as the common law requires.

## CONCLUSION
## DEMAND FOR RELIEF AND JUDGMENT

For the above-stated causes of action therefore, Plaintiff brings his suit;

49. For the above-stated claims, Plaintiff requires the foregoing relief;

50. WHEREFORE; Plaintiff requires relief and judgment against Defendants as follows:

51. WHEREFORE; Plaintiff seeks judgment against Defendant as follows:

On all claims and causes of action:

52. Plaintiff wishes for declaratory judgment against Defendant, for actual damages, punitive damages, the cost of this action, and all other just and proper relief that the court sees fit to grant and order.

53. That, under the law of this case, and the authority of this court of record, the court enter a judgment that the Defendant has acted arbitrarily and without care, has abused her delegated authority and has acted not in accordance with law, but under

color of law, and in excess of its vested constitutional jurisdiction;

54. For injuries caused by, Keri Yoder, a woman, Defendant, damages in the amount of $8,250,000USD for unlawfully administering the Estate of the Counter Plaintiff, most specifically for depriving plaintiff of his child for eight months by her direct actions, and for the humiliation and intimidation caused by said Defendant's disregard for Plaintiffs substantive rights;

55. For injuries caused by, Keri Yoder, a woman, Counter Defendant requests the termination of the state issued authority to practice or adjudicate law based on the abuse of authority, abuse of process and incompetence and for unlawfully administering the Estate of the Counter Plaintiff, the abuse and threats while impersonating a judge, the abuse of her position, acts of treason and for the humiliation and intimidation caused by said Defendant's disregard for Plaintiffs substantive rights;

56. That, under the law of this case, and the authority of this court of record, the court permanently enjoin Defendant from interfering in any way with Counter Plaintiff's lawful enjoyment of his rights;

57. That, under the law of this case, and the authority of this court of record, the court enter a declaratory judgment that Defendant has and are attempting to administer Plaintiff's estate, without his express written consent as is stated in, and is in accordance with the documents on record.

58. That the court grant Plaintiff such other and further relief as the court sees as proper and just;

59. Fees paid to the Plaintiff for his time at the comparable rate of a reasonable attorney fee;

For costs of suit incurred;

## Notice of default

60. Defendant has thirty (30) days from service of process to answer Plaintiff in all actions stated herein or the court will rule in favor of Plaintiff and award Plaintiff all damages, stated in RELIEF REQUIRED above, by NIL-DICIT default judgment against the Defendant.

## Verification

Plaintiff has personal knowledge of the above-stated facts and am competent to testify as to the truth of these facts if called as a witness. Plaintiff declares under penalty of perjury under the laws of the United States of America, and the common law that the forgoing is true and correct, and that all the above actions at law and every declaration contained herein are executed on the land in the non commercial county of Gunnison, Republic of Colorado, on the fifth day of November in the Year Two Thousand and Eighteen.

Brett Andrew: House of Nelson

One of the people of Colorado

Estate dignitary –

Counter Plaintiff

Teste meipso:  Brett Andrew: House of Nelson,

sovereign of the court, holder of the

seal of this court, with said seal thereof,

hereunto affixed, attested by his own hand,

who stands upon the land, Republic of Iowa this        SEAL:

5th Day of November in the Year Two Thousand Eighteen

Attachment A

## THE LAW OF THIS CASE:

## THE LAW OF THIS CASE IS DECREED AS FOLLOWS:

**THE COURT:**

COURT. The person and suit of the sovereign; the place where the sovereign sojourns with his regal retinue, wherever that may be. [Black's Law Dictionary, 5th Edition, 318.]

COURT. An agency of the sovereign created by it directly or indirectly under its authority, consisting of one or more officers, established and maintained for the purpose of hearing and determining issues of law and fact regarding legal rights and alleged violations thereof, and of applying the sanctions of the law, authorized to exercise its powers in the course of law at times and places previously determined by lawful authority. [Isbill v. Stovall, Tex.Civ.App., 92 S.W.2d 1067, 1070; Black's Law Dictionary, 4th Edition, page 425]

COURT OF RECORD. This Court is a "court of record" and it is a judicial tribunal having the following attributes "a-e" defined below with authorities cited:

a) A judicial tribunal having attributes and exercising functions independently of the person of the magistrate designated generally to hold it [Jones v. Jones, 188 Mo.App. 220, 175 S.W. 227, 229; Ex parte Gladhill, 8 Metc. Mass., 171, per Shaw, C.J. See, also, Ledwith v. Rosalsky, 244 N.Y. 406, 155 N.E. 688, 689] [Black's Law Dictionary, 4th Ed., 425, 426]

b) Proceeding according to the course of common law [Jones v. Jones, 188 Mo. App. 220, 175 S.W. 227, 229; Ex parte Gladhill, 8 Metc. Mass., 171, per Shaw, C.J. See, also, Ledwith v. Rosalsky, 244 N.Y. 406, 155 N.E. 688, 689] [Black's Law Dictionary, 4th Ed., 425, 426]

c) Its acts and judicial proceedings are enrolled, or recorded, for a perpetual memory and testimony. [3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal 225; Erwin v. U.S., D.C.Ga., 37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231] [Black's Law Dictionary, 4th Ed., 425, 426]

d) Has power to fine or imprison for contempt. [3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal 225; Erwin v. U.S., D.C.Ga., 37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231.][Black's Law Dictionary, 4th Ed., 425, 426]

e) Generally possesses a seal. [3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal 225; Erwin v. U.S., D.C.Ga., 37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231.] [Black's Law Dictionary, 4th Ed., 425, 426]

The word "magistrate" does not necessarily imply an officer exercising any judicial functions, and might very well be held to embrace notaries and commissioners of deeds. Shultz v. Merchants' Ins. Co., 57 Mo. 336.

...no statutory or constitutional court (whether it be an appellate or supreme court) can second guess the judgment of a court of record. "The judgment of a court of record whose jurisdiction is final, is as conclusive on all the world as the judgment of this court would be. It is as conclusive on this court as it is on other courts. It puts an end to inquiry concerning the fact, by deciding it." Ex BUSTAMONTE, 412 U.S. 218, 255 (1973)]

"Inferior courts" are those whose jurisdiction is limited and special and whose proceedings are not according to the courts of the common law. Ex Parte Kearny, 55 Cal. 212; Smith v. Andrews, 6 Cal. 652.

The Illinois Constitution of 1818 Art. II sec 25.
No judge of any court of law or equity, secretary of state, attorney general, attorney for the state, register, clerk of any court of record, sheriff, or collector, member of either house of congress, or person holding any lucrative office under the United States, or this, (provided that appointments in the militia, postmasters, or justices of the peace shall not be considered lucrative offices,) shall have a seat in the general assembly; nor shall any person holding an office of honor or profit under the government of the United States, hold any office of honor or profit under the authority of this state.

The terms "equity" and "chancery," "court of equity" and "court of chancery," are constantly used as synonymous in the United States. It is presumed that this custom arises from the circumstance that the equity jurisdiction which is exercised by the courts of the various states is assimilated to that possessed by the English courts of chancery. Indeed, in some of the states it is made identical therewith by statute, so far as conformable to our institutions. Wagner v. Armstrong, 93 Ohio St. 443, 113 N.E. 397, 401.

To constitute a court as a superior court as to any class of actions, within the common-law meaning of that term, its jurisdiction of such actions must be unconditional, so that the only thing requisite to enable the court to take cognizance of them is the acquisition of jurisdiction of the persons of the parties. Simmons v. De Bare, 4 Bosw., N.Y., 547

**THE RULES OF THIS COURT ARE AS FOLLOWS:**

2-48                    HABEAS CORPUS — ATTACHMENT "A"

Every court has exclusive control of its process, and no other tribunal can properly interfere with it.  Nelson v. Brown, 23 Mo, 13; Boyle v. Bloom.

The Federal Rules of Civil Procedure are the rules of this court to the extent that those rules are not repugnant to the common law, or unless decreed otherwise by the plaintiff.

The rules shall be construed and administered to secure the just, speedy, and inexpensive determination of the actions, claims, writs, and orders of this Superior Court of Record.

Hearings regarding any writ, action, motion, or other instrument, filed with this court shall only be scheduled by the Plaintiff or special master, be made by a written request, and sealed with the seal of this court.

Orders, writs, judgments, and findings of this court, to be valid, shall be signed by the Plaintiff or special master of this court, sealed with the seal of this court, and filed with the clerk of the court, and may also be signed by the clerk of the court, and or magistrate.

If any claim, statement, fact, or portion in this petition and writ is held inapplicable or not valid, such decision does not affect the validity of any other portion of this petition and writ.

The singular includes the plural and the plural the singular.

The present tense includes the past and future tenses; and the future the present, and the past the present.

The masculine gender includes the feminine and neuter.

The Plaintiffs and Defendants both have the right to make their own visual and audio recordings of the proceedings of this court.

28 U.S. Code 1361 – Action to compel an officer of the United States to perform his duty. The district courts shall have original jurisdiction of any action in the nature of a mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff.

Special Masters of this court shall have the power to swear in marshals of this court of record, take depositions, conduct hearings, sign writs, hold the seal of this court and affix it to instruments from this court, create instruments in the name of this court, collect and hold instruments, papers, and records of this court, issue orders in the capacity of the sovereign in his absence and with his full authority when the sovereign so allows, and file any of the forgoing with the clerk of said court.

This Superior court by the plaintiff and special masters of this Superior court of record have lawful authority to swear in its own marshals to enforce and uphold the orders, fines, writs, judgments, and findings of this Superior court of record.

The sovereign of the court and the special masters of the court shall not be bound by legalese laches.

No statute, act, ordinance, code, proclamation, bill, decree, instrument, deed, policy, contract, bond, letter, pledge, promise, obligation, judgment, hold, custody, consideration, information, reservation, privilege, immunity, suit, prescription, responsibility, administrative management, term, or condition, from any person, or man shall interfere with the law, procedure, judgment, decree, jurisdiction, findings, writs, or orders of this Superior Court of Record, save a twelve member jury of the peerage of the republics of the several united Sates, or a grand jury of twenty five of the same.

"Litigants can be assisted by unlicensed laymen during judicial proceedings. Brotherhood of Trainmen v. Virginia ex rel. Virginia State Bar, 377 U.S. 1; v. Wainwright, 372 U.S. 335; Argersinger v. Hamlin, Sheriff 407 U.S. 425

"Statements of counsel in brief or in argument are not facts before the court and are therefore insufficient for a motion to dismiss or for summary judgment." Trinsey v. Pagliaro, D.C. Pa. 229 F. Supp. 647.

**CONTROLLING TERMS AND DEFINITIONS:**
All definitions, words, phrases and terms in all actions, declarations, motions, statements, depositions, answers, demurs, orders, findings, facts, opinions, writs, documents, and judgements, filed in this court of record, shall be controlled by the definitions stated for same in "A LAW DICTIONARY ADAPTED TO THE CONSTITUTION AND LAWS OF THE UNITED STATES OF AMERICA AND OF THE SEVERAL STATES OF THE AMERICAN UNION With References to the Civil and Other Systems of Foreign Law by John Bouvier, 1856 Ed." unless specifically stated or decreed otherwise by the Plaintiff.

All words, in all documents filed with this court of record, or stated in open court, or in deposition, are as the Plaintiff, in this court of record, understands them.

**SOVEREIGNTY; RIGHTS:**
"...at the Revolution, the sovereignty devolved on the people; and they are truly the sovereigns of the country, but they are sovereigns without subjects...with none to govern but themselves....". CHISHOLM v. GEORGIA (US) 2 Dall 419, 454, 1 L Ed 440, 455 @DALL (1793) pp 471-472.

"The very meaning of 'sovereignty' is that the decree of the sovereign makes law."
American Banana Co. v. United Fruit Co., 29 S.Ct. 511, 513, 213 U.S. 347, 53 L.Ed. 826,
19 Ann.Cas. 1047.

"The people of this State, as the successors of its former sovereign, are entitled to all the
rights which formerly belonged to the King by his prerogative." Lansing v. Smith, 4
Wend. 9 (N.Y.) (1829). 21 Am. Dec. 89.

A consequence of this prerogative is the legal *ubiquity* of the king. His majesty in the eye
of the law is always present in all his courts, though he cannot personally distribute
justice. (Fortesc.c.8. 2Inst.186) His judges are the mirror by which the king's image is
reflected. 1 Blackstone's Commentaries, 270, Chapter 7, Section 379.

"Our government is founded upon compact. Sovereignty was, and is, in the people."
Glass v. Sloop Betsey, supreme Court, 1794.

"The governments are but trustees acting under derived authority and have no power to
delegate what is not delegated to them. But the people, as the original fountain might
take away what they have delegated and entrust to whom they please... The sovereignty
in every state resides in the people of the state and they may alter or change their form of
government at their own pleasure." Luther v. Borden, 48 U.S.1, 12 L. Ed.581.

"Sovereignty itself is, of course, not subject to law, for it is the author and source of law;
but in our system, while sovereign powers are delegated to the agencies of government,
sovereignty itself remains with the people, by whom and for whom all government exists
and acts." Yick Wo v. Hopkins, 118 U.S. 356, page 370.

"Formality should never be permitted to work injustice or deny substantial right." Wolf
v. Cook, 40 Fed R, 482.

"There is no such thing as a power of inherent sovereignty in the government of the
United States .... In this country sovereignty resides in the people, and Congress can
exercise no power which they have not, by their Constitution entrusted to it: All else is
withheld." Julliard v. Greenman, 110 U.S. 421.

"No state legislator or executive or judicial officer can war against the Constitution
without violating his undertaking to support it." The constitutional theory is that we the
people are the sovereigns, the state and federal officials only our agents."
Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401 (1958).

"The sovereignty of a state does not reside in the persons who fill the different
departments of its government, but in the People, from whom the government emanated;
and they may change it at their discretion. Sovereignty, then in this country, abides with

the constituency, and not with the agent; and this remark is true, both in reference to the federal and state government."
Spooner v. McConnell, 22 F 939, 943:

"The people, or sovereign are not bound by general words in statutes, restrictive of prerogative right, title or interest, unless expressly named. Acts of limitation do not bind the King or the people. The people have been ceded all the rights of the King, the former sovereign ... It is a maxim of the common law, that when an act is made for the common good and to prevent injury, the King shall be bound, though not named, but when a statute is general and prerogative right would be divested or taken from the King (or the People) he shall not be bound." The People v. Herkimer, 4 Cowen (NY) 345, 348 (1825)

"A Sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." Kawananakoa v. Polyblank, 205 U.S. 349, 353, 27 S. Ct. 526, 527, 51 L. Ed. 834 (1907). Kawananakoa v. Polyblank, 205 U.S. 349, 353, 27 S. Ct. 526, 527, 51 L. Ed. 834 (1907)

"A grant of corporate existence is a grant of special privileges to the corporators enabling them to act for certain designated purposes as a single individual, and exempting them (unless otherwise specially provided) from individual liability.
The corporation, being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created * * *. It must dwell in the place of its creation, and cannot migrate to another sovereignty." (Paul v. Virginia, (1868) 8 Wall U.S.181.)

"In common usage, the term 'person' does not include the sovereign, and statutes employing the word are ordinarily construed to exclude it." Wilson v. Omaha Indian Tribe 442 US 653, 667 (1979).

"The term 'citizen' as understood in our law, is precisely analogous to the term 'subject' in the common law, and the change of phrase has entirely resulted from the change of government. The sovereignty has been transferred from one man to the collective body of the people and he who before was a 'subject of the King' is now a 'citizen of the state.'"(State v.Manuel,(1838) 4 Dev. &B.L. (N.Car.) 26; quoted in U.S. v. Rhodes (1866) 1 Abb. (U.S.) 39.)

"The state cannot diminish rights of the people." Hurtado v. People of the State of California, 110 U.S. 516.

"If the state converts a liberty into a privilege the citizen can engage in the right with impunity." Shuttlesworth v Birmingham , 373 USs 262

"Where rights secured by the Constitution are involved, there can be no rule-making or legislation which would abrogate them." Miranda v. Arizona 384 U.S. 436, 491.

"The claim and exercise of a Constitutional right cannot be converted into a crime." Miller v. U.S. 230 F 2d 486, 489.

"The practice of Law is an occupation of common right, the same being a secured liberty right." (Sims v. Aherns, 271 S.W. 720 (1925))

No state may convert a secured liberty right into a privilege, issue a license and fee for it. (Murdock vs Pennsylvania 319 US 105 (1943))

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby; any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. [Constitution for the United States of America, Article VI, Clause 2.]

The bill of rights of the of the united States of America, Article IX. The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

The bill of rights of the of the united States of America, Article X. The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

"Personal liberty, or the Right to enjoyment of life and liberty, is one of the fundamental or natural Rights, which has been protected by its inclusion as a guarantee in the various constitutions, which is not derived from, or dependent on, the U.S. Constitution, which may not be submitted to a vote and may not depend on the outcome of an election. It is one of the most sacred and valuable Rights, as sacred as the Right to private property ... and is regarded as inalienable." 16 C.J.S., Constitutional Law, Sect. 202, p.287.

The officers of the law, in the execution of process, are obligated to know the requirements of the law, and if they mistake them, whether by ignorance or design, and anyone is harmed by their error, they must respond in damages." Rogers vs. Marshal (United States use of Rogers vs. Conklin) 1 Wall. (US) 644, 17 L ed 714.

Under the doctrine of trespass ab initio, where a party exceeds an authority given by law, the party loses the benefit of the justification and is considered a trespasser ab initio, although to a certain extent the party followed the authority given. The law will then operate retrospectively to defeat all acts done under the color of lawful authority. *American Mortg. Corp. v. Wyman 41 S.W.2d 270 (Tex. Civ. App. Austin 1931)*

7-48                    HABEAS CORPUS – ATTACHMENT "A"

Thus, a person who enters on real property lawfully pursuant to a conditional or restricted consent and remains after his or her right to possession terminates and demand is made for his or her removal becomes a trespasser from the beginning, and the law will then operate retrospectively to defeat all acts done by him under color of lawful authority. *Williams v. Garnett, 608 S.W.2d 794 (Tex. Civ. App. Waco 1980).*

"Officers of the court have no immunity, when violating a Constitutional right, from liability. For they are deemed to know the law." Murdock v. Penn., 319 US 105

"There can be no sanction or penalty imposed upon one because of this exercise of constitutional Rights." Snerer vs. Cullen, 481 F. 946.

·Every people unlawfully committed, detained, confined or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint.

**RESERVATION OF SOVEREIGNTY:**"[1 (b) Even if the Tribe's power to tax were derived solely from its power to exclude non-Indians from the reservation, the Tribe has the authority to impose the severance tax. Non-Indians who lawfully enter tribal lands remain subject to a tribe's power to exclude them, which power includes the lesser power to tax or place other conditions on the non-Indian's conduct or continued presence on the reservation. The Tribe's role as commercial partner with petitioners should not be confused with its role as sovereign. It is one thing to find that the Tribe has agreed to sell the right to use the land and take valuable minerals from it, and quite another to find that the Tribe has abandoned its sovereign powers simply because it has not expressly reserved them through a contract. To presume that a sovereign forever waives the right to exercise one of its powers unless it expressly reserves the right to exercise that power in a commercial agreement turns the concept of sovereignty on its head. Merrion, Et Al, dba Merrion & Bayless, Et Al v. Jicarilla Apache Tribe, Et Al. (1982) 455 U.S. 130, pp. 144-148.

"A constitution is designated as a supreme enactment, a fundamental act of legislation by the people of the state. A constitution is legislation direct from the people acting in their sovereign capacity, while a statute is legislation from their representatives, subject to limitations prescribed by the superior authority." Ellingham v. Dye, 178 Ind. 336; 99 NE 1; 231 U.S. 250; 58 L. Ed. 206; 34 S. Ct. 92; Sage v. New York , 154 NY 61; 47 NE 1096

"Common law and constitutional principles of governmental or sovereign immunity have never permitted government agents to commit trespasses in violation of property rights." Little v. Barreme 2 Cranch (6 US) 170; 2 L Ed 243 (1804); Wise v. Withers, 3 Cranch (7 US) 331; 2 L Ed 457 (1806); Osborn v. Bank of United States, 9 Wheat (22 US) 738; 6 L

8-48                    HABEAS CORPUS – ATTACHMENT "A"

Ed 204 (1824); Mitchell v. Harmony, 13 How (54 US) 115; 14 L Ed 75 (1852); Bates v. Clark, 95 US 204; L Ed 471 (1877)

**REPUBLICAN GOVERNMENT:** One in which the powers of sovereignty are vested in the people and are exercised by the people, either directly, or through representatives chosen by the people, to whom those powers are specially delegated. [In re Duncan, 139 U.S. 449, 11 S.Ct. 573, 35 L.Ed. 219; Minor v. Happensett, 88 U.S. (21 Wall.) 162, 22 L.Ed. 627. Black's Law Dictionary, 5th Ed. 626.]

H.R. 53. January 23, 1818. Read twice, and committed to a committee of the whole House on Monday next. A Bill to enable the people of the Illinois Territory, to form a Constitution and state government, and for the admission of such state into the union, on an equal footing with the original states.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the inhabitants of the territory of Illinois, be and are hereby authorized to form for themselves, a constitution and state government, and to assume such name as they shall deem proper; and the said state when formed, shall be admitted into the union, upon the same footing with the original states, in all respects whatever...

Sec. 4. *And be it further enacted,* That the members of the convention, thus duly elected, be and they are hereby authorized to meet at the seat of government of the said territory, on the first Monday, of the month of August next, which convention, when met, shall first determine, by a majority of the whole number elected, whether it be, or be not expedient at that time to form a constitution and state government for the people within the said territory, and, if it be expedient, the convention shall be and hereby is authorized to form a constitution and state government; or, if it be deemed more expedient, the said convention shall provide by ordinance for electing representatives to form a constitution or frame of government; which said representatives shall be chosen in such manner and in such proportion, and shall meet at such time and place, as shall be prescribed by the said ordinance, and shall then form for the people of said territory, a constitution and state government: *Provided,* That the same whenever formed shall be republican, and not repugnant to the ordinance of the thirteenth of July, seventeen hundred and eighty-seven, between the original states and the people and states of the territory, north-west of the river Ohio; excepting so much of said articles as relate to the boundaries of the states therein to be formed;....

H.R. 53 was approved by the senate of the United States on April 18, 1818 and can be found in the congressional record of FIFTEENTH CONGRESS. Sess. I. Ch. 67. 1818. page 428- 431

Congressional record of November 1818 "Mr. Anderson, of Kentucky, from the committee appointed yesterday, on the constitution of the state of Illinois,, reported a

joint resolution, declaring the admission of the state of Illinois into the Union; which was read the first and second time, and ordered to be engrossed and read a third time to-day."

JURNAL OF THE HOUSE [Nov.23. An engrossed resolution, "declaring the admission of the state of Illinois into the Union," was read the third time; And on the question, shall it pass? It passed in the affirmative, Yeas 117, Nays 34. Ordered, That the clerk carry the said resolution to the Senate, and ask their concurrence therein. And the House adjourned.

## CITIZEN OF THE UNITED STATES:

The persons declared to be citizens are "all persons born or naturalized in the United States, and subject to the jurisdiction thereof." The evident meaning of these last words is not merely subject in some respect or degree to the jurisdiction of the United States, but completely subject to their political jurisdiction and owing them direct and immediate allegiance. And the words relate to the time of birth in the one case, as they do to the time of naturalization in the other. Persons not thus subject to the jurisdiction of the United States at the time of birth cannot become so afterwards except by being naturalized, either individually, as by proceedings under the naturalization acts, or collectively, as by the force of a treaty by which foreign territory is acquired. Elk v. Wilkins, 112 U.S. 94 (1884)

"The right to trial by jury in civil cases, guaranteed by the Seventh Amendment…and the right to bear arms guaranteed by the Second Amendment…have been distinctly held not to be privileges and immunities of citizens of the United States guaranteed by the Fourteenth Amendment:..and in effect the same decision was made in respect of the guarantee against prosecution, except by indictment of a grand jury, contained in the Fifth Amendment…and in respect of the right to be confronted with witnesses, contained in the Sixth Amendment…it was held that the indictment, made indispensable by the Fifth Amendment, and the trial by jury guaranteed by the Sixth Amendment, were no privileges and immunities of citizens of the United States, as those words were used in the fourteenth Amendment. We conclude, therefore, that the exemption from compulsory self-incrimination is not a privilege of immunity of national citizenship guaranteed by this clause of the Fourteenth Amendment." Twining v. New Jersey, 211 US 78, 98-99.

"The amendment (fourteenth) reversed and annulled the original policy of the constitution," United States v. Rhodes, 27 Federal Cases, 785, 794.

## UNITED STATES IS A CORPORATION:

"THE UNITED STATES GOVERNMENT IS A FOREIGN CORPORATION WITH RESPECT TO A STATE." [emphasis added] Volume 20: Corpus Juris Sec. §1785: NY re: Merriam 36 N.E. 505 1441 S.Ct.1973, 41 L.Ed.287. *(find this holding and check the punctuation of __State__)*

Writ of habeas corpus traditionally has been accepted as the specific instrument to obtain release from unlawful confinement. 28 U.S.C.A. ß 2254(a). Wilkinson v. Dotson, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (U.S. 2005).

At the absolute minimum, the Suspension Clause protects the writ of habeas corpus as it existed in 1789. U.S. Const. Art. 1, ß 9, cl. 2. I.N.S. v. St. Cyr, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (U.S. 2001).

### 39 Am Jur 2d Habeas Corpus and Postconviction Remedies ß 1

"Habeas corpus" is a generic term, [n1] which was applied under English statutory and common law to several different kinds of writs, a number of which are in use in the American legal system. [n2] Much the most important of these is the writ of habeas corpus ad subjiciendum, which is the remedy provided for a person illegally deprived of his liberty. [n3] Where the term "habeas corpus" is used alone, it is the writ of habeas corpus ad subjiciendum, sometimes known as the "Great Writ," [n4] that is generally meant; this is the sense in which the term was known at early common law [n5] and in which it is used in the Constitution of the United States. [n6]

The writ of habeas corpus ad subjiciendum is referred to as a "high prerogative writ," [n7] the vital purposes of which are to obtain immediate relief from illegal confinement, [n8] or to deliver someone from unlawful custody. [n9] Considered the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action, [n10] the writ serves as a procedural device for subjecting executive, judicial, or private restraints on liberty to judicial scrutiny; where it is available, it assures, among other things, that a prisoner may require his jailer to justify the detention under the law. [n11]

The writ of habeas corpus cum causa, sometimes called habeas corpus ad faciendum et recipiendum, is another of the forms, and a rather unusual form, of the writ of habeas corpus that existed under English law. [n22] It issued where a person was sued in some inferior jurisdiction and wanted to remove the action to a superior court. [n23] The writ of habeas corpus cum causa, whose existence has been recognized by at least one early American court, [n24] is said to be grantable of common right without any motion in court, and to instantly supersede all proceedings in the court below. [n25]

n1  Ex parte Bollman, 8 U.S. 75, 2 L. Ed. 554 (1807).

n2  Carbo v. U. S., 364 U.S. 611, 81 S. Ct. 338, 5 L. Ed. 2d 329 (1961); Ex parte Bollman, 8 U.S. 75, 2 L. Ed. 554 (1807).

n3  Carbo v. U. S., 364 U.S. 611, 81 S. Ct. 338, 5 L. Ed. 2d 329 (1961).

n4  Stone v. Powell, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), reh'g denied, 429 U.S. 874, 97 S. Ct. 197, 50 L. Ed. 2d 158 (1976) and reh'g denied, 429 U.S. 874, 97 S. Ct. 197, 50 L. Ed. 2d 158 (1976).

n5  Carbo v. U. S., 364 U.S. 611, 81 S. Ct. 338, 5 L. Ed. 2d 329 (1961).

n6  Ex parte Bollman, 8 U.S. 75, 2 L. Ed. 554 (1807).

n7  In re Renfrow, 247 N.C. 55, 100 S.E.2d 315 (1957).

n8  Olson v. Anstreicher, 327 A.2d 603 (Del. 1974); Jolly v. Avery, 220 Kan. 692, 556 P. 2d 449 (1976); Chamblee v. Chamblee, 248 S.W.2d 422 (Ky. 1952); Snyder on Behalf of Snyder v. Talbot, 652 A.2d 100 (Me. 1995); In re Lockhart, 157 Ohio St. 192, 47 Ohio

Op. 129, 105 N.E.2d 35 (1952); Adams v. Circuit Court of Randolph County, 173 W. Va. 448, 317 S.E.2d 808 (1984).

The unique purpose of habeas corpus is to release the applicant from unlawful confinement. Allen v. McCurry, 449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980). The essence of a writ of habeas corpus is the immediate release of a party deprived of his personal freedom. Stokes v. Superintendent, Massachusetts Correctional Inst., Walpole, 389 Mass. 883, 452 N.E.2d 1123 (1983).

Habeas corpus provides a special and extraordinary legal remedy for illegal detention. Valle v. Commissioner of Correction, 244 Conn. 634, 711 A.2d 722 (1998).

n9  Fleury v. Langlois, 94 R.I. 412, 181 A.2d 244 (1962).

The writ of habeas corpus may be used for the purpose of effecting a speedy release of persons who are or illegally detained from the control of those who are entitled to the custody of them. Ex parte McGuire, 135 Cal. 339, 67 P. 327 (1902); Porter v. Porter, 60 Fla. 407, 53 So. 546 (1910).

n10  Harris v. Nelson, 394 U.S. 286, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969), reh'g denied, 394 U.S. 1025, 89 S. Ct. 1623, 23 L. Ed. 2d 50 (1969).

n11  Peyton v. Rowe, 391 U.S. 54, 88 S. Ct. 1549, 20 L. Ed. 2d 426 (1968).

n22  Ex parte Perrin, 124 N.J.L. 280, 11 A.2d 412 (N.J. Sup. Ct. 1940).

n23  Ex parte Bollman, 8 U.S. 75, 2 L. Ed. 554 (1807) (pointing out that under common law, the writ commanded the inferior judges to produce the body of the defendant and to state the day and cause of his caption and detainer); Ex parte Perrin, 124 N.J.L. 280, 11 A.2d 412 (N.J. Sup. Ct. 1940).

n24  Ex parte Perrin, 124 N.J.L. 280, 11 A.2d 412 (N.J. Sup. Ct. 1940).

n25  Ex parte Bollman, 8 U.S. 75, 2 L. Ed. 554 (1807).

39 Am Jur 2d Habeas Corpus and Postconviction Remedies ß 1

## 39 Am Jur 2d Habeas Corpus and Postconviction Remedies ß 6

A proceeding for the purpose of restoring a person held under illegal restraint to liberty must be summary in order to be effectual, [n67] and in fact, habeas corpus has been classified as a summary remedy. [n68] It is analogous to a proceeding in rem, where instituted for the sole purpose of having the person restrained produced before the judge in order that the cause of his detention may be inquired into and his status fixed. [n69] Moreover, the writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody. [n70] In a habeas corpus proceeding, the only parties before the trial court are the petitioner and the person holding the petitioner in custody, and the only question to be resolved is whether the custodian has authority to deprive the petitioner of his liberty. [N71]

n67  Ex parte Brugneaux, 51 Wyo. 103, 63 P.2d 800 (1937).

The writ of habeas corpus must be administered with initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected. Harris v. Nelson, 394 U.S. 286, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969), reh'g denied, 394 U.S. 1025, 89 S. Ct. 1623, 23 L. Ed. 2d 50 (1969).

The fundamental purpose of writ of habeas corpus is to benefit prisoners, and the writ is designed to accomplish speedy inquiry into allegedly unlawful detention through a summary judicial proceeding. In Interest of Stevens, 652 A.2d 18 (Del. 1995).

The writ of habeas corpus, the primary instrument for safeguarding individual liberty against unlawful state action, is designed to provide a speedy and efficient medium for judicial inquiry. State ex rel. Clark v. Marullo, 352 So. 2d 223 (La. 1977).
n68  Wilkinson v. Lee, 138 Ga. 360, 75 S.E. 477 (1912); Ex parte Reynolds, 48 Okla. Crim. 189, 290 P. 357 (1930); Unnamed Prisoners of Temporary Waterbury Correctional Facility v. Maranville, 154 Vt. 279, 576 A.2d 132 (1990).

The federal habeas statute provides for a swift, flexible, and summary determination of a state prisoner's claim. Preiser v. Rodriguez, 411 U.S. 475, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973) (overruling on other grounds recognized by, Picrin-Peron v. Rison, 930 F.2d 773 (9th Cir. 1991)) and (overruling on other grounds recognized by, Deters v. Collins, 985 F.2d 789 (5th Cir. 1993)).
n69  Simmons v. Georgia Iron & Coal Co., 117 Ga. 305, 43 S.E. 780 (1903).
n70  Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S. Ct. 1123, 35 L. Ed. 2d 443 (1973).

## WRITS:
The following officers are authorized to help enforce the writs and judgments of this court: Lawfully elected sheriffs, constables, united states marshals, coroners, marshals of this court of record, and members of the peerage who wish to help in a lawful manner according to the commands, the writs, and judgments of this court.

When a writ is delivered or a final judgment, summary or otherwise, is to be enforced, or a fine for contempt is to be collected, or someone is to be imprisoned for contempt, it is the duty of the officers of this court to execute the commands emanating from this court and instruments thereof promptly and vigorously.

## MONEY: as used in this case shall mean:
No State shall...coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts.... Article I, Section 10, Clause 1, U.S. Constitution.

"Dollars and Units." – each to be of the value of a Spanish milled dollar as the same is now current and to contain three hundred and seventy-one grains and four sixteenth parts of a grain of pure or four hundred and sixteen grains of standard silver. 1 U.S. Stat. 246, Sec. 9 (1792).

## CONTRACT:

15-48              HABEAS CORPUS – ATTACHMENT "A"

"The required elements of a contract are an offer, acceptance, and valuable consideration." Armstrong v. Collins, 366 S.C. 204, 621 S.E.2d 368 (Ct. App. 2005) (Am Jur 2d §19 Contracts).

"An action will not lie to recover money or property which is the fruit of an employment involving a violation of law, where a recovery would have to be based on the illegal contract." Boylston Bottling Co. v. O'Neill, 231 Mass. 498, 121 N.E. 411, 2 A.L.R. 902 (1919); Woodson v. Hopkins, 85 Miss. 171, 38 So. 298 (1905). (Am Jur 2d §39 "Actions")

"All the powers of the government must be carried into operation by individual agency, either through the medium of public officers, or contracts made with individuals." [Osborn v. Bank of U.S., 22 U.S. 738 (1824)

## CONSIDERATION:

"Consideration is an essential element of, and is necessary to the enforceability or validity of, a contract." Voelker v. Porsche Cars North America, Inc., 348 F.3d 639 (7th Cir. 2003), opinion superseded on reh'g, 2003 WL 22930364 (7th Cir. 2003) (applying Illinois law); Steinberg v. Chicago Medical School, 69 Ill. 2d 320, 13 Ill. Dec. 699, 371 N.E.2d 634 (1977); (Am Jur 2d §19 Contracts).

It follows from this rule that a promise not supported by any consideration cannot amount to a contract … American Equity Ins. Co. v. Lignetics, Inc., 284 F. Supp. 2d 399 (N.D. W. Va. 2003); Maurice O'Meara Co. v. National Park Bank of New York, 239 N.Y. 386, 146 N.E. 636, 39 A.L.R. 747 (1925); Carlisle v. T & R Excavating, Inc., 123 Ohio App. 3d 277, 704 N.E.2d 39 (9th Dist. Medina County 1997) (Am Jur 2d §19 "Contracts").

"A lawful consideration must exist and be tendered to support the [Federal reserve] Note….The Jury found there was no lawful consideration and I agree. Only God can create something of value out of nothing." Justice Martin V. Mahoney's Memorandum in support of his Judgment and Decree of December 9th 1968 in the Credit River Township, Scott County, Minnesota case, First National Bank of Montgomery Bank vs. Jerome Daly.

"Federal reserve notes lack lawful consideration." [Credit River Township, Scott County, Minnesota case: [cf. First National Bank of Montgomery Bank vs. Jerome Daly, 1968]

## CLAIMS:

"The general rule in appraising the sufficiency of a complaint for failure to state a claim is that a complaint should not be dismissed '***unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' CONLEY VS. GIBSON (1957), 355 U.S. 41, 45, 46, 78 S.Ct. 99, 102, 2LEd 2d 80; SEYMOUR VS. UNION NEWS COMPANY, 7 Cir., 1954, 217 F.2d 168; and see

16-48                    HABEAS CORPUS – ATTACHMENT "A"

rule 54c, demand for judgment, FEDERAL RULES OF CIVIL PROCEDURE, 28 USCA: "***every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." U.S. V. WHITE COUNTY BRIDGE COMMISSION (1960), 2 Fr Serv 2d 107, 275 F2d 529, 535

"A complaint may not be dismissed on motion if it states some sort of claim, baseless though it may eventually prove to be, and inartistically as the complaint may be drawn. Therefore, under our rules, the plaintiff's allegations that he is suing in 'criminal libel' should not be literally construed. [3] The complaint is hard to understand but this, with nothing more, should not bring about a dismisal of the complaint, particularly is this true where a defendant is not represented by counsel, and in view of rule 8{f} of the rules of civil procedure, 28 U.S.C., which requires that all pleadings shall be construed as to do substantial justice BURT VS. CITY OF NEW YORK, 2Cir., (1946) 156 F.2d 791. Accordingly, the complaint will not be dismissed for insufficiency. [4,5] Since the Federal Courts are courts of limited jurisdiction, a plaintiff must always show in his complaint the grounds upon which that jurisdiction depends." STEIN VS. BROTHERHOOD OF PAINTERS, DECORATORS, AND PAPER HANGERS OF AMERICA, DCCDJ (1950), 11 F.R.D. 153.

"A complaint will not be dismissed for failure to state a claim, even though inartistically drawn and lacking in allegations of essential facts, it cannot be said that under no circumstances will the party be able to recover." JOHN EDWARD CROCKARD VS. PUBLISHERS, SATURDAY EVENING POST MAGAZINE OF PHILADELPHIA, PA (1956) Fr Serv 29, 19 F.R.D. 511, DCED Pa 19 (1958)

"FRCP 8f: CONSTRUCTION OF pleadings. All pleadings shall be so construed as to do substantial justice." DIOGUARDI VS. DURNING, 2 CIR., (1944) 139 F2d 774

"Counterclaims will not be dismissed for failure to state a claim, even though inartistically drawn and lacking in allegations of essential facts, it cannot be said that under no circumstances will the party be able to recover." LYNN VS VALENTINE VS. LEVY, 23 Fr 46, 19 FDR, DSCDNY (1956)

**PUBLIC OFFICERS:**
Public officials are properly subject to public scrutiny in the performance of their duties. Anchorage v. Anchorage Daily News (Alaska) 794 P2d 584, 18 Media L R 1020.

The acceptance of every public office implies an agreement on the part of the officer that he or she will execute its duties with diligence and fidelity. Nelson v. West Va. Pub. Employees Ins. Bd., 171 W. Va. 445, 300 SE2d 86, 34 ALR4th 438.

A public official is held in public trust. Madlener v. Finley (1st Dist) 161 Ill App 3d 796, 113 Ill Dec 712, 515 NE2d 697, app gr 117 Ill Dec 226, 520 NE2d 387.

Under Federal Tort Claims Act similarly, federal law enforcement officers who generally enjoy absolute immunity from tort liability may nonetheless be held liable for the tort of trespass. Black v Sheraton Corp. of America, 184 US App DC 46,564 F2d 531, 541 (1977)

## COLORADO AT LAW

1. Rule 1 page 22. At law or equity. The rules of civil procedure provide for the application of the rules to the procedure in all actions, suits, or proceedings of a civil nature, whether **cognizable at law**or in equity. State Bd. of Exam'rs of Architects v. Marshall, 136 Colo. 200, 315 P.2d 198(1957).

2. Rule 2 one form of action page 23. "This rule abolishes distinction between actions **at law**and in equity. Dunlap v. Sanderson, 456 F. Supp. 971 (D. Colo. 1978)."

3. Rule 15 page 125. Equitable relief not precluded. Although the plaintiffs originally sought damages in an action **at law,**equitable relief was not precluded where a change in circumstances altered the posture of the case and rendered the original relief sought inappropriate. Rice v. Hilty, 38 Colo. App. 338, 559 P.2d 725 (1976).

4. Rule 17 page 178 (real party in interest). "Effect of this rule is to put end to action of ejectment. The fiction by which "John Doe" and "Richard Roe" were made to represent the plaintiff and defendant, respectively, in an action of ejectment of common law permitted any number of actions of this character to be maintained between the same parties in interest after verdict and judgment. The litigation terminated only when the unsuccessful party tired of his futile efforts, or when a court of equity, after repeated **trials at law**resulting in like verdicts and judgments, enjoined the unsuccessful party from harrassing, by future actions in ejectment, him who had recovered these judgments. The effect of this rule, which requires actions to be prosecuted in the name of the real party in interest, is to put an end to this practice. Under the section, standing alone, the first verdict and judgment in ejectment, as in other cases, unless it was set aside or vacated for cause, would be conclusive of the rights of the parties, that were, or might have been, there litigated. Iron Silver Mining Co. v. Campbell, 61 F. 932 (8th Cir. 1894)."

5. Rule 27 page 222. "**At common law, in actions at law,** it was deemed the right of the parties to have wit- nesses produced and examined viva voce and the right to

take depositions was unknown; liti- gants, therefore, were obliged to resort to chan- cery or to procure the consent of the adverse party, which the court could compel by defer- ring the trial or by refusing to render judgment. Rozek v. Christen, 153 Colo. 597, 387 P.2d 425 (1963)."

6. Rule 38 page 268 (where jury rights exist) "The right to trial by jury is guaranteed only **in actions at law** specifically named in section (a). Setchell v. Dellacroce, 169 Colo. 212, 454 P.2d 804 (1969); Gibson v. Angros, 30Colo. App. 95, 491 P.2d 87 (1971)."

7. Rule 38 page 269. "**The original complaint filed in an action fixes the nature of the suit**, by what arm of the court it should be tried, and whether either party is entitled to a jury trial. Miller v. District Court,

154 Colo. 125, 388 P.2d 763 (1964).

The complaint fixes the nature of a suit. Miller v. Carnation Co., 33 Colo. App. 62, 516P.2d 661 (1973); Zimmerman v. Mozer, 10Bankr. 1002 (Bankr. D. Colo. 1981).

**Where the original petition and the third- party complaint states actions sounding in equity, it is proper to deny the third-party respondent's jury demand**.In re Malone v. Colo. Nat'l Bank, 658 P.2d 284 (Colo. App. 1982).(read that again until it sinks in!!!)

It is the character of the complaint, rather than that of any counterclaims or defenses sub- sequently asserted, that fixes the nature of the suit and determines whether it should be tried in **equity or at law.** First Nat. Bank of Meeker v. Theos, 794 P.2d 1055 (Colo. App. 1990)."

8. Rule 38 page 269. "Where plaintiffs pray primarily for equi- table relief, and only in the alternative for a **remedy at law**, the character of the suit is equitable, and plaintiffs therefore are not en- titled to a jury trial. Miller v. Carnation Co., 33 Colo. App. 62, 516 P.2d 661 (1973)."

9. Rule 38 page 270. "Similarly, the fact that the equitable relief sought would require the conveyance of land does not bring the case within that portion of this rule requiring a jury trial in actions for the recovery of specific real property, inasmuch as that portion deals only with actions at law for the recovery of real property. Setchell v. Dellacroce, 169 Colo. 212, 454 P.2d 804(1969)."

10. Right to jury in replevin action. A replevin action is an **action at law**and traditionally car- ries with it the right to a jury trial. Zimmermanv. Mozer, 10 Bankr. 1002 (Bankr. D. Colo. 1981).

HABEAS CORPUS – ATTACHMENT "A"

11. Rule 38 page 270. "Similarly, the fact that the equitable relief sought would require the conveyance of land does not bring the case within that portion of this rule requiring a jury trial in actions for the recovery of specific real property, inasmuch as that portion deals only with actions at law for the recovery of real property. Setchell v. Dellacroce, 169 Colo. 212, 454 P.2d 804(1969)."

12. Rule 38 page 270. "Right to jury in replevin action. A replevin action is **an action at law**and traditionally car- ries with it the right to a jury trial. Zimmermanv. Mozer, 10 Bankr. 1002 (Bankr. D. Colo. 1981)."

13. Rule 38 page 270 "Where fraud in both the execution and the inducement is available as a defense in an **action at law,**then under this rule, the defendant is entitled to have this issue go to the jury in an action on a note. Atkinson v. Englewood State Bank, 141 Colo. 436, 348 P.2d 702 (1960)."

14. Rule 38 page 270 "The fact that plaintiff asks for a money judgment is by no means decisive that the action is one **at law**. Cree v. Lewis, 49 Colo. 186, 112 P. 326 (1910)."

15. Rule 54 page 354 "Equitable relief not precluded. Although the plaintiffs originally sought damages in an **action at law,**equitable relief was not precluded where a change in circumstances altered the posture of the case and rendered the original relief sought inappropriate. Rice v. Hilty, 38 Colo. App. 338, 559 P.2d 725 (1976); Booth v.Bd. of Educ., 950 P.2d 601 (Colo. App. 1997), aff'd in part and rev'd in part on other grounds, 984 P.2d 639 (Colo. 1999)."

16. Rule 56 page 382 "Where it could not be said as a matter of law that **plaintiffs' remedy at law**would be adequate to compensate them for the loss suffered, the granting of summary judgment was improper. Benson v. Nelson, 725 P.2d 71 (Colo. App. 1986)."

17. Rule 56 page 383 "Section (c) authorizes a trial court to enter a decree for specific performance of a con- tract upon motion for a summary judgment over the objection that a summary judgment can only be granted in an **action at law**, as technically distinguished from an equitable proceeding. Linch v. Game & Fish Comm'n, 124 Colo. 79, 234 P.2d 611 (1951)."

18. Rule 57 page 393. "If the action in which declaratory relief is sought would have been an action **at law**had it been permitted to mature without intervention of declaratory procedure, the right to trial by jury of disputed questions of fact is not affected. Baumgartner v. Schey, 143 Colo. 373, 353 P.2d 375 (1960)."

19. Rule 58 page 398. "If the action in which declaratory relief is sought would have been an action at law had it been permitted to mature without the in- tervention of

declaratory procedure, the right to trial by jury of disputed questions of fact is not affected, and this has the salutary effect of permitting the defendant a trial by jury whether the action is brought under the common law or under the declaratory judgments rule. Baumgartner v. Schey, 143 Colo. 373, 353 P.2d375 (1960)."

20. Rule 60 page 430. "Essential criteria upon which relief may be granted in an equitable action to afford relief from a prior judgment contemplated by section(b) are as follows: (1) That the judgment ought not, in equity and good conscience, be enforced; (2) that there can be asserted a meritorious defense to the cause of action on which the judgment is founded; (3) that fraud, accident, or mistake prevented the defendant in the action from obtaining the benefit of his defense;(4) that there is an absence of fault or negligence on the part of defendant; (5) and that there exists no adequate **remedy at law.**Dudleyv. Keller, 33 Colo. App. 320, 521 P.2d 175 (1974); In re Gance, 36 P.3d 114 (Colo. App. 2001)."

**Rule 65 page 449. "Equity will not intervene where one has a plain and adequate remedy at law. Am. In- vestors Life Ins. Co. v. Green Shield Plan. Inc.. 145 Colo. 188, 358 P.2d 473 (1960) ."**

**RIGHT TO TRAVEL:**
The roads and highways belong to the people, for it is the tax on gasoline, as an indirect tax, that creates the funds to build and maintain them for the people, for their use and enjoyment, by the prerogative of the people, in a non commercial capacity.

"Complete freedom of the highways is so old and well established a blessing that we have forgotten the days of the Robber Barons and toll roads, and yet, under an act like this, arbitrarily administered, the highways may be completely monopolized, if, through lack of interest, the people submit, then they may look to see the most sacred of their liberties taken from them one by one, by more or less rapid encroachment." Robertson v. Department of Public Works, 180 Wash 133, 147.

"The right of the citizen to travel upon the public highways and to transport his property thereon, either by a carriage, or automobile, is not a mere privilege which a City may prohibit or permit at will, but a common right which he has under the right to Life, Liberty and the Pursuit of Happiness." Thompson v. Smith 154 SE 579.

"The use of the highway for the purpose of travel and transportation is not a mere privilege but a common and fundamental right of which the public and individuals cannot rightfully be deprived." Chicago Motor Coach v. Chicago, 337 Ill. 200, 169 NE 22, 66 ALR 834. Ligare v. Chicago, 139 Ill. 46, 28 NE 934. Boone v. Clark, 214 SW 607: 25 Am Jur (1st) "Highways", Sec. 163.

21-48                    HABEAS CORPUS – ATTACHMENT "A"

"The right of the Citizen to travel upon the highway and to transport his property thereon in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain in the running of a stagecoach or omnibus. The former is the usual and ordinary right of the Citizen, a right common to all, while the latter is special, unusual, and extraordinary. Ex Parte Dickey, (Dickey vs. Davis), 85 SE 781. (Note: the word "Citizen" in this case means a de jure Citizen of one of the republics of the united States of America.)

The definition of the word Driver for this case is as follows. Driver. "One employed in conducting a coach, carriage, wagon, or other vehicle... Bouvier's Law Dictionary, 1914 Ed., pg. 940.

"The term 'motor vehicle' is different and broader than the word 'automobile.'" City of Dayton vs. DeBrosse. 23 NE. 2d 647, 650; 62 Ohio App. 232.

The definition of the term 'Motor vehicle' for this case is as follows – The term "motor vehicle" means every description of carriage or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways in the transportation of passengers, or passengers and property, or property or cargo. Title 18 U.S.C. Section 31.

The definition of the term 'Used for commercial purposes' in this case is as follows. – The term "used for commercial purposes" means the carriage of persons or property for any fare, fee, rate, charge or other consideration, or directly or indirectly in connection with any business, or other undertaking intended for profit. Title 18 U.S.C. Section 31.

"With regard particularly to the U.S. Constitution, it is elementary that a Right secured or protected by that document cannot be overthrown or impaired by any state police authority." Connolly v. Union Sewer Pipe Co. 184 US 540; Lafarier vs. Grand Trunk R.R.Co., 24 A. 848; O'Neil vs. Providence Amusement Co., 108 A. 887.

"It is well settled that the Constitutional Rights protected from invasion by the police power, include Rights safeguarded both by express and implied prohibitions in the Constitutions." Tiche vs. Osborne, 131 A. 60.

"There should be no arbitrary deprivation of Life or Liberty...." Barbour vs. Connolly. 113 US 27, 31; Yick Wo vs. Hopkins, 118 US 356.

"...the only limitation found restricting the right of the state to condition the use of the public highways as a means of vehicular transportation for compensation are (1) that the state must not exact of those it permits to use the highways for hauling for gain that they surrender any of their inherent U.S. Constitutional Rights as a condition precedent to

22-48                    HABEAS CORPUS – ATTACHMENT "A"

obtaining permission for such use..." Riley vs. Laeson, 142, So. 619; Stephenson vs. Binford, supra.

"No public policy of a state can be allowed to override the positive guarantees of the U.S. Constitution." 16 Am Jur 2d, Const. Law, Sect. 70.

"The right of a citizen to travel upon the public highways and to transport his property thereon, by horsedrawn carriage, wagon, or automobile, is not a mere privilege which may be permitted or prohibited at will, but a common right which he has under his right to life, liberty and the pursuit of happiness. Under this constitutional guaranty one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places, and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's rights, he will·be protected, not only in his person, but in his safe conduct." Thompson v. Smith.

Thompson v. Smith, 154 SE 579, 11 American Jurisprudence, Constitutional Law, section 329, page 1135 "The right of the Citizen to travel upon the public highways and to transport his property thereon, in the ordinary course of life and business, is a common right which he has under the right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety. It includes the right, in so doing, to use the ordinary and usual conveyances of the day, and under the existing modes of travel, includes the right to drive a horse drawn carriage or wagon thereon or to operate an automobile thereon, for the usual and ordinary purpose of life and business." –

Thompson vs. Smith, supra.; Teche Lines vs. Danforth, Miss., 12 S.2d 784 "… the right of the citizen to drive on a public street with freedom from police interference… is a fundamental constitutional right"

Caneisha Mills v. D.C. 2009 "The use of the automobile as a necessary adjunct to the earning of a livelihood in modern life requires us in the interest of realism to conclude that the RIGHT to use an automobile on the public highways partakes of the nature of a liberty within the meaning of the Constitutional guarantees. . ."

Berberian v. Lussier (1958) 139 A2d 869, 872, See also: Schecter v. Killingsworth, 380 P. 2d 136, 140; 93 Ariz. 273 (1963). "The right to operate a motor vehicle [an automobile] upon the public streets and highways is not a mere privilege. It is a right of liberty, the enjoyment of which is protected by the guarantees of the federal and state constitutions."

Adams v. City of Pocatello, 416 P.2d 46, 48; 91 Idaho 99 (1966). "A traveler has an equal right to employ an automobile as a means of transportation and to occupy the public highways with other vehicles in common use."

Campbell v. Walker, 78 Atl. 601, 603, 2 Boyce (Del.) 41. "The owner of an automobile has the same right as the owner of other vehicles to use the highway,* * * A traveler on foot has the same right to the use of the public highways as an automobile or any other vehicle."

Simeone v. Lindsay, 65 Atl. 778, 779; Hannigan v. Wright, 63 Atl. 234, 236. "The RIGHT of the citizen to DRIVE on the public street with freedom from police interference, unless he is engaged in suspicious conduct associated in some manner with criminality is a

FUNDAMENTAL CONSTITUTIONAL RIGHT which must be protected by the courts." People v. Horton 14 Cal. App. 3rd 667 (1971) "The right to make use of an automobile as a vehicle of travel long the highways of the state, is no longer an open question. The owners thereof have the same rights in the roads and streets as the drivers of horses or those riding a bicycle or traveling in some other vehicle."

House v. Cramer, 112 N.W. 3; 134 Iowa 374; Farnsworth v. Tampa Electric Co. 57 So. 233, 237, 62 Fla. 166. "The automobile may be used with safety to others users of the highway, and in its proper use upon the highways there is an equal right with the users of other vehicles properly upon the highways. The law recognizes such right of use upon general principles.

Brinkman v Pacholike, 84 N.E. 762, 764, 41 Ind. App. 662, 666. "The law does not denounce motor carriages, as such, on public ways. They have an equal right with other vehicles in common use to occupy the streets and roads. It is improper to say that the driver of the horse has rights in the roads superior to the driver of the automobile. Both have the right to use the easement."

Indiana Springs Co. v. Brown, 165 Ind. 465, 468. U.S. Supreme Court says No License Necessary To Drive Automobile On Public Highways/Streets No License Is Necessary Copy and Share Freely YHVH.name 2 2 "A highway is a public way open and free to any one who has occasion to pass along it on foot or with any kind of vehicle." Schlesinger v. City of Atlanta, 129 S.E. 861, 867, 161 Ga. 148, 159;

Holland v. Shackelford, 137 S.E. 2d 298, 304, 220 Ga. 104; Stavola v. Palmer, 73 A.2d 831, 838, 136 Conn. 670 "There can be no question of the right of automobile owners to occupy and use the public streets of cities, or highways in the rural districts." Liebrecht v. Crandall, 126 N.W. 69, 110 Minn. 454, 456 "The word 'automobile' connotes a pleasure vehicle designed for the transportation of persons on highways."

-American Mutual Liability Ins. Co., vs. Chaput, 60 A.2d 118, 120; 95 NH 200 Motor Vehicle: 18 USC Part 1 Chapter 2 section 31 definitions: "(6) Motor vehicle. – The term "motor vehicle" means every description of carriage or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways..." 10) The term "used for commercial purposes" means the carriage of persons or property for any fare, fee, rate, charge or other consideration, or directly or indirectly in connection with any business, or other undertaking intended for profit. "A motor vehicle or automobile for hire is a motor vehicle, other than an automobile stage, used for the transportation of persons for which remuneration is received."

-International Motor Transit Co. vs. Seattle, 251 P. 120 The term 'motor vehicle' is different and broader than the word 'automobile.'"

-City of Dayton vs. DeBrosse, 23 NE.2d 647, 650; 62 Ohio App. 232 "Thus self-driven vehicles are classified according to the use to which they are put rather than according to the means by which they are propelled" – Ex Parte Hoffert, 148 NW 20 "

The Supreme Court, in Arthur v. Morgan, 112 U.S. 495, 5 S.Ct. 241, 28 L.Ed. 825, held that carriages were properly classified as household effects, and we see no reason that automobiles should not be similarly disposed of."

24-48                 HABEAS CORPUS – ATTACHMENT "A"

Hillhouse v United States, 152 F. 163, 164 (2nd Cir. 1907). "...a citizen has the right to travel upon the public highways and to transport his property thereon..." State vs. Johnson, 243 P. 1073; Cummins vs. Homes, 155 P. 171; Packard vs. Banton, 44 S.Ct. 256; Hadfield vs. Lundin, 98 Wash 516, Willis vs. Buck, 263 P. 1 982;
Barney vs. Board of Railroad Commissioners, 17 P.2d 82 "The use of the highways for the purpose of travel and transportation is not a mere privilege, but a common and fundamental Right of which the public and the individual cannot be rightfully deprived." Chicago Motor Coach vs. Chicago, 169 NE 22; Ligare vs. Chicago, 28 NE 934; Boon vs. Clark, 214 SSW 607; 25 Am.Jur. (1st) Highways Sect.163 "the right of the Citizen to travel upon the highway and to transport his property thereon in the ordinary course of life and business... is the usual and ordinary right of the Citizen, a right common to all."
–

Ex Parte Dickey, (Dickey vs. Davis), 85 SE 781 "Every Citizen has an unalienable RIGHT to make use of the public highways of the state; every Citizen has full freedom to travel from place to place in the enjoyment of life and liberty." People v. Nothaus, 147 Colo. 210. "No State government entity has the power to allow or deny passage on the highways, byways, nor waterways... transporting his vehicles and personal property for either recreation or business, but by being subject only to local regulation i.e., safety, caution, traffic lights, speed limits, etc. Travel is not a privilege requiring licensing, vehicle registration, or forced insurances."
Chicago Coach Co. v. City of Chicago, 337 Ill. 200, 169 N.E. 22. "Traffic infractions are not a crime." People v. Battle "Persons faced with an unconstitutional licensing law which purports to require a license as a prerequisite to exercise of right... may ignore the law and engage with impunity in exercise of such right."
Shuttlesworth v. Birmingham 394 U.S. 147 (1969). U.S. Supreme Court says No License Necessary To Drive Automobile On Public Highways/Streets No License Is Necessary Copy and Share Freely YHVH.name 3 "The word 'operator' shall not include any person who solely transports his own property and who transports no persons or property for hire or compensation."
Statutes at Large California Chapter 412 p.83 "Highways are for the use of the traveling public, and all have the right to use them in a reasonable and proper manner; the use thereof is an inalienable right of every citizen." Escobedo v. State 35 C2d 870 in 8 Cal Jur 3d p.27 "RIGHT — A legal RIGHT, a constitutional RIGHT means a RIGHT protected by the law, by the constitution, but government does not create the idea of RIGHT or original RIGHTS; it acknowledges them. . . " Bouvier's Law Dictionary, 1914, p. 2961. "Those who have the right to do something cannot be licensed for what they already have right to do as such license would be meaningless."
City of Chicago v Collins 51 NE 907, 910. "A license means leave to do a thing which the licensor could prevent." Blatz Brewing Co. v. Collins, 160 P.2d 37, 39; 69 Cal. A. 2d 639. "The object of a license is to confer a right or power, which does not exist without it."
Payne v. Massey (19__) 196 SW 2nd 493, 145 Tex 273. "The court makes it clear that a license relates to qualifications to engage in profession, business, trade or calling; thus,

when merely traveling without compensation or profit, outside of business enterprise or adventure with the corporate state, no license is required of the natural individual traveling for personal business, pleasure and transportation."

Wingfield v. Fielder 2d Ca. 3d 213 (1972). "If [state] officials construe a vague statute unconstitutionally, the citizen may take them at their word, and act on the assumption that the statute is void." –

Shuttlesworth v. Birmingham 394 U.S. 147 (1969). "With regard particularly to the U.S. Constitution, it is elementary that a Right secured or protected by that document cannot be overthrown or impaired by any state police authority." Donnolly vs. Union Sewer Pipe Co., 184 US 540; Lafarier vs. Grand Trunk R.R. Co., 24 A. 848; O'Neil vs. Providence Amusement Co., 108 A. 887. "The right to travel (called the right of free ingress to other states, and egress from them) is so fundamental that it appears in the Articles of Confederation, which governed our society before the Constitution."

(Paul v. Virginia). "[T]he right to travel freely from State to State … is a right broadly assertable against private interference as well as governmental action. Like the right of association, it is a virtually unconditional personal right, guaranteed by the Constitution to us all." (U.S. Supreme Court,

Shapiro v. Thompson). EDGERTON, Chief Judge: "Iron curtains have no place in a free world. …'Undoubtedly the right of locomotion, the right to remove from one place to another according to inclination, is an attribute of personal liberty, and the right, ordinarily, of free transit from or through the territory of any State is a right secured by the Constitution.'

Williams v. Fears, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186. "Our nation has thrived on the principle that, outside areas of plainly harmful conduct, every American is left to shape his own life as he thinks best, do what he pleases, go where he pleases." Id., at 197. Kent vs. Dulles see Vestal, Freedom of Movement, 41 Iowa L.Rev. 6, 13—14. "The validity of restrictions on the freedom of movement of particular individuals, both substantively and procedurally, is precisely the sort of matter that is the peculiar domain of the courts." Comment, 61 Yale L.J. at page 187. "a person detained for an investigatory stop can be questioned but is "not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest."Justice White, Hiibel "Automobiles have the right to use the highways of the State on an equal footing with other vehicles."

Cumberland Telephone. & Telegraph Co. v Yeiser 141 Kentucy 15. "Each citizen has the absolute right to choose for himself the mode of conveyance he desires, whether it be by wagon or carriage, by horse, motor or electric car, or by bicycle, or astride of a horse, subject to the sole condition that he will observe all those requirements that are known as the law of the road."

Swift v City of Topeka, 43 U.S. Supreme Court says No License Necessary To Drive Automobile On Public Highways/Streets No License Is Necessary Copy and Share Freely YHVH.name 4 Kansas 671, 674. The Supreme Court said in U.S. v Mersky (1960) 361 U.S. 431: An administrative regulation, of course, is not a "statute." A traveler on foot has the same right to use of the public highway as an automobile or any other vehicle.

26-48                   HABEAS CORPUS – ATTACHMENT "A"

Cecchi v. Lindsay, 75 Atl. 376, 377, 1 Boyce (Del.) 185. Automotive vehicles are lawful means of conveyance and have equal rights upon the streets with horses and carriages. Chicago Coach Co. v. City of Chicago, 337 Ill. 200, 205; See also: Christy v. Elliot, 216 Ill. 31; Ward v. Meredith, 202 Ill. 66; Shinkle v. McCullough, 116 Ky. 960; Butler v. Cabe, 116 Ark. 26, 28-29. …automobiles are lawful vehicles and have equal rights on the highways with horses and carriages. Daily v. Maxwell, 133 S.W. 351, 354.

Matson v. Dawson, 178 N.W. 2d 588, 591. A farmer has the same right to the use of the highways of the state, whether on foot or in a motor vehicle, as any other citizen.

Draffin v. Massey, 92 S.E.2d 38, 42. Persons may lawfully ride in automobiles, as they may lawfully ride on bicycles. Doherty v. Ayer, 83 N.E. 677, 197 Mass. 241, 246; Molway v. City of Chicago, 88 N.E. 485, 486, 239 Ill. 486; Smiley v. East St. Louis Ry. Co., 100 N.E. 157, 158. "A soldier's personal automobile is part of his 'household goods[.]'

U.S. v Bomar, C.A.5(Tex.), 8 F.3d 226, 235" 19A Words and Phrases – Permanent Edition (West) pocket part 94. "[I]t is a jury question whether … an automobile … is a motor vehicle[.]"

## THE RIGHT TO DENY MEDICAL:

"The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." The principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions." Cruzan v. Director, Missouri Department of Health, (88-1503), 497 U.S. 261 (1990)

The U.S. Supreme Court has long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, "guarantees more than fair process." (Washington v. Glucksberg, 521 U.S. 702, 719, 138 L. Ed. 2d 772, 117 S. Ct. 2258 (1997)) The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests:"521 U.S. at 720; see also Reno v. Flores, 507 U.S. 292, 301-302, 123 L. Ed. 2d 1, 113 S. Ct. 1439 (1993); Troxel v. Granville, 530 U.S. 57, 65 ( U.S. , 2000),

Mugler v. Kansas 123 US 623 (1887) "The supreme court of the United States is, however, the final expositor and arbiter of all disputed questions touching the scope and meaning of that sacred instrument [the US Constitution], and its decisions thereon are binding upon all courts, both state and federal." "…a legislative act contrary to the constitution is not law…an act of the legislature repugnant to the constitution is void." Marbury v. Madison (1 Cranch 170) 5 US 137 (1803).

"An unconstitutional act is not law…it imposes no duty…it is, in legal contemplation, as inoperative as though it had never been passed." Norton v. Shelby County 118 US 425 (1886)

"Dangerousness Within the Institution Must Be Proven to Treat an Involuntarily Committed Individual Over His Objection In Dep't of Health & Mental Hygiene v. Kelly, 918 A.2d 470 (Md. 2007), the Court of Appeals of Maryland unanimously upheld the Circuit Court for Baltimore City's ruling that Section 10-708 (g), of the Health-General Article of the Maryland Code (1982, 2005 Repl. Vol.) requires the state to prove that an involuntarily committed individual is dangerous to himself or others within the institution before it may forcibly administer medication. The right to refuse treatment is embodied in the common-law doctrine of informed consent:

27-48                    HABEAS CORPUS – ATTACHMENT "A"

"After *Quinlan,* however, most courts have based a right to refuse treatment either solely on the common law right to informed consent or on both the common law right and a constitutional privacy right." (See *L. Tribe, American Constitutional Law* 1511, p.1365 (2d ed. 1988)).

*In re Fiori,* 637 A.2d 905, 910 (Pa. 1996) *"the doctrine of informed consent declares that absent an emergency situation, medical treatment may not be imposed without the patients informed consent. A logical corollary to this doctrine is the patient's right, in general, to refuse treatment and to withdraw consent to treatment once begun."*

The liberty interest at issue in this case -- the interest of a parent in the care, custody, and control of his child during his parenting time -- is perhaps the oldest of the fundamental liberty interests recognized by the United States Supreme Court and Colorado Courts, 406 U.S. 205, 232, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond                'debate as an enduring American tradition"); *Quilloin v. Walcott,* 434                U.S. 246, 255, 54 L. Ed. 2d 511, 98 S. Ct. 549 (1978)

"We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"; *Parham v. J. R.,* 442 U.S. 584, 602, 61 L. Ed. 2d 101, 99 S. Ct. 2493 (1979)

"Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course"); *Santosky v. Kramer,* 455 U.S. 745, 753, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982)

discussing "the fundamental liberty interest of natural parents in the care, custody, and management of their child"); *Glucksberg, supra,* at 720 ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the right . . . to direct the education and upbringing of one's children" (*citing Meyer and Pierce*)). In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children, including medical treatment decisions (*Troxel v. Granville,* 530 U.S. 57, 65-67 ( U.S. , 2000).

More than 75 years ago, the Court in *Meyer v. Nebraska,* 262 U.S. 390, 399, 401, 67 L. Ed. 1042, 43 S. Ct. 625 (1923), held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, the Court in *Pierce v. Society of Sisters,* 268 U.S. 510, 534-535, 69 L. Ed. 1070, 45 S. Ct. 571 (1925), again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." The Court explained in *Pierce* that "the child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." 268 U.S. at 535. The Court returned to the subject in *Prince v. Massachusetts,* 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of

28-48                    HABEAS CORPUS - ATTACHMENT "A"

their children, stating "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." 321 U.S. at 166. In subsequent cases also, the Court has recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *See, e.g., Stanley v. Illinois,* 405 U.S. 645, 651, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972)

"It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'comes to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements'";*Wisconsin v. Yoder*"So long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children" (Troxel v. Granville, 530 U.S. 57, 68-69 ( U.S. , 2000) citing Flores, 507 U.S. at 304). Any infringement of the fundamental right of parents to make difficult decisions concerning the care, custody, and control of their children is to be subjected to strict scrutiny Williams v. Williams, 256 Va. 19, 21, 501 S.E.2d 417, 418 (1998)(compelling state interest required before authorizing state interference with a parent's right to make decisions regarding the child) Troxel v. Granville, 530 U.S. 57, 80 (U.S., 2000)(Thomas, J. concurring)

## JURISDICTION:
We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Cohens v.Virginia, 19 U.S. 264, 6 Wheat. 265, 5 L.Ed. 257 (1821).

"When a judge acts as a trespasser of the law, when a judge does not follow the law, he then loses subject matter jurisdiction and the Judges orders are void, of no legal force or affect" (see Ulrich v. Butler, 599 U.S. 908(2010))

"When a judge acts intentionally and knowingly to deprive a person of his constitutional rights he exercises no discretion or individual judgment; he acts no longer as a judge, but as a "minister" of his own prejudices." 386 U.S. 547, 568.

"The U.S. Supreme Court has stated that "no state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it". Cooper v. Aaron, 358 U.S. 1, 78 S. Ct. 1401 (1958) See also In Re Sawyer, 124 U.S. 200 (188); U.S. v. Will, 449 U.S. 200, 216, 101 S. Ct. 471, 66 L. Ed. 2d 392, 406 (1980); Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 404, 5 L. Ed 257 (1821).

"It is axiomatic that any action taken by a court when it lacked jurisdiction is a nullity."Davidson Chevrolet, Inc. V. City and County of Denver, 138 Colo. 171, 330 P.2d 1116 (1958)

Canon 2 A. A judge should respect and comply with the law and should conduct himself or herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. A trial judge must conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.' A.B.A. Standards, The Function of the Trial Judge 1.5.

The appearance of partiality is a chief concern. Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921);

Colorado Code of Judicial Conduct, Canon 3.C(1). Courts must meticulously avoid any appearance of partiality, not merely to secure the confidence of the litigants immediately involved, but 'to retain public respect and secure willing and ready obedience to their judgments.'

Nordloh v. Packard, 45 Colo. 515, 521, 101 P. 787, 790 (1909). 'The duty to be impartial cannot be fulfilled where a judge takes an active role in the presentation of the prosecution's case, acting as an advocate and not a judge.

People v. Martinez, 523 P.2d 120,121, 185 Colo. 187, (Colo. 1974) "(T)he semblance of due process is a sham when the judge is both prosecutor and judge."

Harthun v. District Court, 178 Colo. 118, 495 P.2d 539 (1972). Courts must meticulously avoid any appearance of partiality.

People v. District Court, 192 Colo. 503, 560 P.2d 828 (1977).  Although the trial judge believes in his own impartiality, it is the court's duty to "eliminate every semblance of reasonable doubt or suspicion that a trial by a fair and impartial tribunal may be denied." Zoline v. Telluride Lodge Ass'n, 732 P.2d 635 (Colo.1987).

The law provides that once State and Federal Jurisdiction has been challenged, it must be proven. Main v. Thiboutot, 100 S. Ct. 2502 (1980).

Jurisdiction can be challenged at any time and once challenged, cannot be assumed and must be decided. Basso v. Utah Power & Light Co., 495 F 2d 906, 910.

A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking. Bradbury v. Dennis, 310 F.2d 73 (10th Cir. 1962)

...if the issue is presented in any way the burden of proving jurisdiction rests upon him who invokes it. Latana v. Hopper, 102 F. 2d 188;

When it clearly appears that the court lacks jurisdiction, the court has no authority to reach the merits. In such a situation the action should be dismissed for want of jurisdiction. Melo v. United States, 505 F. 2d 1026

Court must prove on the record, all jurisdiction facts related to the jurisdiction asserted. Latana v. Hopper, 102 F. 2d 188; Chicago v. New York, 37 F Supp. 150.

No officer can acquire jurisdiction by deciding he has it. The officer, whether judicial or ministerial, decides at his own peril. Middleton v. Low (1866), 30 C. 596, citing Prosser v. Secor (1849), 5 Barb.(N.Y) 607, 608.

Where a court has jurisdiction, it has a right to decide any question which occurs in the cause, and whether its decision be correct or otherwise, its judgments, until reversed, are regarded as binding in every other court. But if it acts without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers. Elliott v Peirsol, 1 Pet. 328, 340, 26 U.S. 328, 340, 7L.Ed. 164 (1828)

30-48                    HABEAS CORPUS - ATTACHMENT "A"

Thus, where a judicial tribunal has no jurisdiction of the subject matter on which it assumes to act, its proceedings are absolutely void in the fullest sense of the term. Dillon v. Dillon, 187 P 27.

A court has no jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and a court must have the authority to decide that question in the first instance. Rescue Army v. Municipal Court of Los Angeles, 171 P2d 8; 331 US 549, 91 L. ed. 1666, 67 S.Ct. 1409.

"A universal principle as old as the law is that a proceedings of a court without jurisdiction are a nullity and its judgment therein without effect either on person or property." Norwood v. Renfield, 34 C 329; Ex parte Giambonini, 49 P. 732

"Jurisdiction is fundamental and a judgment rendered by a court that does not have jurisdiction to hear is void ab initio." In Re Application of Wyatt, 300 P. 132; Re Cavitt, 118 P2d 846

"The burden of proof of jurisdiction lies with the asserter." McNutt v. GMAC, 298 US 178.

"A departure by a court from those recognized and established requirements of law, however close apparent adherence to mere form in method of procedure, which has the effect of depriving one of a constitutional right, is an excess of jurisdiction." Wuest v. Wuest, 127 P2d 934, 937. Outboard Marine Corp. v. Thomas, 610 F. Supp. 1234, 1242 (N.D. Ill., 1985) Wuest v. Wuest, 127 P2d 934, 937. Outboard Marine Corp. v. Thomas, 610 F. Supp. 1234, 1242 (N.D. Ill., 1985)

"Acting without statutory power at all, or misapplying one's statutory power, will result in a finding that such action was ultra vires. The assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." Davis v. Wechsler, 263 US 22, 24 Davis v. Wechsler, 263 US 22, 24

"An affirmance results when a judge acts in the clear absence of all jurisdiction, i. e., of authority to act officially over the subject-matter in hand, the proceeding is coram non judice. In such a case the judge has lost his judicial function, has become a mere private person, and is liable as a trespasser for the damages resulting from his unauthorized acts. Such has been the law from the days of the case of The Marshalsea," 10 Coke 68. It was recognized as such in Bradley v. Fisher, 13 Wall. (80 U.S.) 335, 351, 20 L. Ed. 646. In State ex rel. Egan v. Wolever, 127 Ind. 306, 26 N. E. 762, 763, the court said: `The converse statement of it is also ancient. Where there is no jurisdiction at all there is no judge; the proceeding is as nothing.' Manning v. Ketcham, 58 F.2d 948 (1932)

Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply void, and this is even prior to reversal." Valley v. Northern Fire and Marine Ins. Co., 254 U.S. 348, 41 S. Ct. 116 (1920). See also Old Wayne Mut. I. Assoc. v. McDonough, 204 U.S. 8, 27 S.Ct. 236 (1907); Williamson v. Berry, 8 How. 495, 540, 12 L. Ed, 1170, 1189, (1850); Rose v. Himely, 4 Cranch 241, 269, 2 L.Ed. 608, 617 (1808)

A "void" judgment as we all know, grounds no rights, forms no defense to actions taken thereunder, and is vulnerable to any manner of collateral attack (thus hereby ). No statute of limitations or repose runs on its holdings, the matters thought to be settled thereby are

31-48                  HABEAS CORPUS – ATTACHMENT ' "A"

not res judicata, and years later, when the memories may have grown dim and rights long been regarded as vested, any disgruntled litigant may reopen the old wound and once more probe its depths. And it is then as though trial and adjudication had never been. 10/13/58 FRITTS v. KRUGH. SUPREME COURT OF MICHIGAN, 92 N.W.2d 604, 354 Mich. 97

**TREASON:**

The United States Supreme Court has clearly, and repeatedly, held that any judge who acts without jurisdiction is engaged in an act of treason. U.S. v. Will, 449 U.S. 200, 216, 101, S. Ct. 471, 66 L.Ed. 2d 392, 406 (1980): Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821)

We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Cohens v. Virginia, 19 U.S. 264, 6 Wheat. 265, 5 L.Ed. 257 (1821)

"Standing is typically treated as a threshold issue, in that without it no justiciable controversy exists. As a general principle, standing to invoke the judicial process requires an actual justiciable controversy as to which the complainant has a real interest in the ultimate adjudication because he or she has either suffered or is about to suffer an injury." People v. Superior Court (Plascencia) (2002) 103 Cal.App.4th 409, 126 Cal.Rptr.2d 793 People v. Superior Court (Plascencia) (2002) 103 Cal.App.4th 409, 126 Cal.Rptr.2d 793.

"Officials and judges are deemed to know the law and sworn to uphold the law; officials and judges cannot claim to act in good faith in willful deprivation of law, they certainly cannot plead ignorance of the law, even the Citizen cannot plead ignorance of the law, the courts have ruled there is no such thing as ignorance of the law, it is ludicrous for learned officials and judges to plead ignorance of the law therefore there is no immunity, judicial or otherwise, in matters of rights secured by the Constitution for the United States of America." Owen vs City of Independence, 100 S Ct. 1398; Maine vs. Thiboutot, 100 S. Ct. 2502; and Hafer vs. Melo, 502 U.S. 21 Owen vs City of Independence, 100 S Ct. 1398; Maine vs. Thiboutot, 100 S. Ct. 2502; and Hafer vs. Melo, 502 U.S. 21

In these cases he is not sued as, or because he is, the officer of the government, but as an individual, and the court is not ousted of jurisdiction because he asserts authority as such officer. To make out his defense he must show that his authority was sufficient in law to protect him... It is no answer for the defendant to say I am an officer of the government and acted under its authority unless he shows the sufficiency of that authority. Cunningham v. Macon, 109 U.S. 446, 452, 456, 3 S.Ct. 292, 297 and Poindexter v. Greenhow, 114 U.S. 270, 287, 5 S. Ct. 903, 912

**DUE PROCESS:**

When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. *GERSTEIN v. PUGH ET AL, 95 S. Ct. 854, 420 U.S. 103, 43 L. Ed. 2d 54, 1975.SCT.40602*

"Moreover, if Heath's arrest had been authorized by the statutes, his subsequent detention as pleaded proved would make a case of false imprisonment against Boyd. The undisputed facts are that after his arrest Heath rode with the sheriff to the former's car, which he then entered and drove several miles to the courthouse,

32-48                    HABEAS CORPUS – ATTACHMENT "A"

followed by Boyd.   There he was detained in Boyd's office from one to three hours, while Boyd was seeking advice by telephone as to what to do, in the face of a plain statutory command as to what must be done in all cases of arrest without warrant.   Art. 217, C.C.P., 1925, provides, "In each case enumerated in this chapter, the person making the arrest shall immediately take the person arrested * * before the nearest magistrate where the arrest was made without an order." Substantially the same requirement appears in Art. 325, C.C.P., 1925, and Art. 487, P.C., 1925.   Presumably, there was a magistrate in Mertzon, the county seat. Yet Boyd offers no reason why he did not take Heath before that official. Neither in his pleadings nor in his testimony does he suggest that a magistrate was not reasonably available, although the arrest and detention all occurred between 8 o'clock in the morning and noon.   If he had taken Heath to that official, he could have gotten the information and assistance he was seeking by telephone. He was under no obligation to seek advice or aid from Johnson.   He was under a positive duty immediately to seek a magistrate.   That such failure, unexcused, makes a case of false imprisonment, as a matter of law, is held by all the authorities. Newby v. Gunn et al, 74 Texas, 455, 12 S.W. 67; McBeath v. Campbell, 12 S.W. (2d) 118; Alamo Downs, Inc., et [***14]  al v. Briggs (Civ. App.), 106 S.W. (2d) 733 (er. dism.); Box v. Fluitt (Civ. App.), 47 S.W. (2d) 1107; Maddox v. Hudgeons (Civ. App.), 72 S.W. 414 (er. ref.);  [**218]  Karner et al v. Stump (Civ. App.), 34 S.W. 656; Petty v. Morgan et al (Civ. App.), 116 S.W. 141; Bishop v. Lucy et al (Civ. App.) 50 S.W. 1029; 35 C.J.S., p. 546, sec. 31."   Heath v Boyd, 141 Tex. 569; 175 S.W.2d 214; 1943 Tex. LEXIS 370

In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  A detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. See Ingraham v. Wright, 430 U.S. 651, 671-672 n. 40, 674 (1977); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 165-167, 186 (1963); Wong Wing v. United States, 163 U.S. 228, 237 (1896).

'The record offers, as the government's only justification, evidence that the magistrate, who issued the warrants, advised of his unavailability after the early evening of Friday, September 8, 1989. There are three other magistrates in the District. The record is bereft of any evidence as to their availability. Likewise, the record is bereft of any evidence as to the availability of any of the district Judges. Absent evidence of other than the unavailability of the duty magistrate (the propriety of which is not here questioned), there is no basis to find that the delay for the entire period from the arrest to presentment was necessary. To be sure, it was a weekend. The court was closed. But those facts do not entitle the government to presume the absence of an obligation to try to arrange the appearance of an arrestee before one of the other possible judicial officers. The law remains a force in life even outside usual business hours and all judicial officers have the obligation to respond to the needs of parties as they are mandated by the law. Relater to their reasonable non-judicial activities, all judicial officers stand ready to fulfill that obligation. Here, the government has not shown the unavailability of all the possible judicial officers. The obligation of complying with the law lies with the government, which thus has the burden of proving that an arrestee was brought before a judicial officer without unnecessary delay. Its proof of the unavailability of one judicial officer does not prove that the delay to the next regular business hours, some sixty to sixty-five hours later, did not

constitute unnecessary delay if it does not exhaust the possibility of an appearance before one of the other judicial officers in the district." See United States v. Colon, 835 [*21] F.2d 27, 30-31 (2d Cir. 1987). *UNITED STATES v. MORGAN, et al. 1990 U.S. Dist. LEXIS 6206*

**VENUE:**
"First. The canon of construction which teaches that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States," FOLEY BROS. V. FILARDO , 336 U.S. 281 (1949)

"I take leave to say that if the principles thus announced should ever receive the sanction of a majority of this Court, a radical and mischievous change in our system of government will be the result. We will in that event pass from the era of constitutional liberty guarded and protected by a written constitution into an era of legislative absolutism....The idea prevails with some -- indeed, it found expression in arguments at the bar -- that we have in this country substantially or practically two national governments -- one to be maintained under the Constitution, with all its restrictions, the other to be maintained by Congress outside and independently of that instrument, by exercising such powers as other nations of the earth are accustomed to exercise. It is one thing to give such a latitudinarian construction to the Constitution as will bring the exercise of power by Congress, upon a particular occasion or upon a particular subject, within its provisions. It is quite a different thing to say that Congress may, if it so elects, proceed outside of the Constitution. The glory of our American system of government is that it was created by a written constitution which protects the people against the exercise of arbitrary, unlimited power, and the limits of which instrument may not be passed by the government it created, or by any branch of it, or even by the people who ordained it, except by amendment or change of its provisions. "To what purpose," Chief Justice Marshall said in Marbury v. Madison, 1 Cranch 137, 5 U. S. 176, "are powers limited, and to what purpose is that limitation committed to writing, if these limits may at any time be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed are of equal obligation."... It will be an evil day for American liberty if the theory of a government outside of the supreme law of the land finds lodgment in our constitutional jurisprudence. No higher duty rests upon this Court than to exert its full authority to prevent all violation of the principles of the Constitution."
Downes v Bidwell, 182 U.S. 244 (Dissenting Opinion)

**WARRANTS:**
"It is the duty of every person who is charged with the execution of process to explain what would otherwise be a trespass, by showing his warrant and his official character. If he choose to conceal these, he puts himself outside of the protection they give him, and becomes, in the eye of all to whom he refuses to state them, an aggravated trespasser... and he who withholds such information not only takes all the risk of being treated as an insolent trespasser, but is guilty of bringing odium on the law of which he is the unworthy minister." State ex rel. v. Claudius, 1 Mo. Ap., 551; Barton v. Wilkinson, 18 Vt., 186.

"A warrant of commitment must be in writing, under the hand and seal of the magistrate and express the causes of the commitment, in order to be examined into (if necessary) upon habeas corpus. If there be no cause expressed the gaoler is not bound to detain the prisoner; for the law judges in this respect, saith Sir Edward Coke, like Festus the Roman governor, that it is unreasonable to send a prisoner, and not to signify withal the crimes against him." Sir William Blackstone, 1 Black. Com., 187.

"The question is, what authority has the jailer to detain him? To ascertain this we must look at the warrant of commitment only. It is that only which can justify his detention. That warrant states no offense. It does not allege that he was convicted of any crime. It states merely that he had been brought before a meeting of many Justices, who had required him to find sureties for his good behavior. It does not charge of their own knowledge or suspicion, or upon the oath of any person whomsoever... The judges of this court unanimously of opinion that the warrant of commitment was illegal for want of stating some good cause certain, supported by oath." Chief Justice Marshall, Ex parte Burford 3 Cranch, 448.

"That where a warrant cannot legally issue without oath, but is so issued, all the parties concerned in the arrest under such process are trespassers." Gold v. Bissell, 1 Wendell, 218.

The judicial officer must exercise his or her own judgment and not act on the judgment of the accuser, and probable cause does not exist for the issuance of a warrant unless the judicial officer is convinced from the complaint that there is reasonable ground to suspect that the accused is guilty of the offense. People v. Greer, 91 Ill. App.3d 304 (1980).

"They conferred, as against the Government, the right to be let alone -- the most comprehensive of rights, and the right most valued by civilized men. To protect that right, every unjustifiable intrusion by the Government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment. And the use, as evidence" Olmstead v. U.S., 277 US 438,478, (1928)

**LAND RIGHTS:**
Nothing passes a perfect title to public lands, with the exception of a few cases, but a patent. Wilcox v. Jackson 38 U.S. 498 (1839).

A warranty deed of conveyance is a "color of title", [see Dempsey v. Burns, 281 Ill, 664].

A purchase at tax sale is a purchase of "color of title" United States v. Beggerly 524 U.S. 38 (1998).

Color of title is not title in fact or in law. Mecoy v. Lowrie, 253 P.2d 415, 418.

35-48                HABEAS CORPUS - ATTACHMENT "A"

Wish statutory presumptions and constitutional prohibitions brought into issue by the Plaintiff in Ejectment, the Court takes judicial cognizance that constitutional rights may not be infringed simply because the majority of the people choose that they be. Nor may a Constitutional prohibition be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment; the power to create presumption is not a means of escape from constitutional restriction. California Jurisprudence 3d. Volume 13, pg 412 sub section 229.

"Patents are issued between sovereigns… and deeds are executed by persons and private corporation" – Leading Fighter v. Country of Gregory. 230 N.W. 2D 114, 116 (1975)

"A patent is the highest evident of title, and is conclusive, against the government and all claiming under junior titles, until it set aside or annulled by some judicial tribunal." Stone v U.S. 69 U.S. 2 Wall. 525, 535 (1864)

"As we said in the case of Smelting Company v. Kemp; 'It is this unassailable character [of the patent] which gives it its chief, indeed its only value, as a means of quieting its possessor in the enjoyment of the lands it embraces.'" The validity of the patent could not be attacked except under fraud or clerical error and either of these circumstances has to be proven in a court of law, and the challenge must be brought within six months of the granting of the patent. In fact, in a court of law, the patent is the conclusive proof of legal title. Id. 452 "It is among the elementary principles of the law that in actions of ejectment the legal title must prevail. The patent of the United States passes that title. Whoever holds it must recover against those who have only unrealized hopes to obtain it, or claims which it is the exclusive province of a court of equity to enforce. However great these may be, they constitute no defense in an action at law based upon the patent. That instrument must first be got out of the way, or its enforcement enjoined, before others having mere equitable rights can gain or hold possession of the lands it covers. This is so well established, so completely embedded in the law of ejectment that no one ought to be misled by any argument to the contrary." See also Johnson v. Christian,128 U.S. 374, 382 (1888) and Carter v Ruddy, 166 U.S. 493, 496 (1897) See also Johnson v. Christian,128 U.S. 374, 382 (1888) and Carter v Ruddy, 166 U.S. 493, 496 (1897)

"That the plaintiff in ejectment must in all cases prove a legal title to the premises in himself, at the time of the demise laid in the declaration, and that evidence of an equitable estate will not be sufficient for a recovery, are principles so elementary and so familiar to the profession as to render unnecessary the citation of authority in support of them… This legal title the plaintiff must establish either upon a connected documentary chain of evidence, or upon proofs of possession of sufficient

duration to warrant the legal conclusion of the existence of such written title." In the case of lands granted under a Land Patent, a "connected documentary chain of evidence" is on public record at the Recorder of Deeds for the county in which the land is located. Even the sovereign States themselves do not have the power to overturn Land Patents and their effects upon the land, namely, the severance from the interference in them by the administration of government. Gibson v. Chouteau, 13 Wall. 92, 102 (1871)

"In the Federal Courts, where the distinction between legal and equitable proceedings is strictly maintained, and remedies afforded by law and equity are separately pursued, the action of ejectment can only be sustained upon the possession by the plaintiff of the legal title…in the action of ejectment in the Federal Courts, the legal title must prevail, and the patent, when regular on its face, is conclusive evidence of that title. So also in the action of ejectment in the State courts, when the question presented is whether the plaintiff or the defendant has the superior legal title from the United States, the patent must prevail. For, as said in Bagnell v. Broderick, 'Congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the Federal government in reference to the public lands declares the patentthe superior and conclusive evidence of legal title…'" Furthermore, the states may not legislate a superior, or even an equal, instrument to the Land Patent. Bagnell et. al. v. Broderick, 13 Pet. 436, 451 (1839)

"It [the patent] passes whatever interest the United States may then have possessed in the premises. It operates in consequence as an absolute bar to all claims under the United States having their origin subsequent to the petition. But the patent has a still further operation and effect. It is not merely a deed of the United States, conveying whatever interest they may have held in the premises at the institution of the proceedings before the Land Commission. It is also a record of the Government, showing its action and judgment with respect to the title of the patentees at the date of the cession…This instrument, as we have stated, is the record of the Government upon the title of the patentee to the land described therein, declaring the validity of that title and that it rightfully attaches to the land. Upon all the matters of fact and law essential to authorize its issuance, it imports absolute verity; and it can only be vacated and set aside by direct proceedings instituted by the Government, or by parties acting in the name and by the authority of the Government. Until thus vacated it is conclusive, not only between the patentee and the Government, but between parties claiming in privity with either by title subsequent." 18 Cal. 571-572 (citation omitted). Leo Sheep Co v United States, 440 U.S. 668, 687 (1979)

**FICTITIOUS NAME OR ADDRESS:**
Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in

37-48              HABEAS CORPUS – ATTACHMENT "A"

section 1341 of this title or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name, or address or name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such fictitious, false, or assumed title, name, or address, or name other than his own proper name, shall be fined under this title or imprisoned not more than five years, or both.  (cf. 18 U. S. Code § 1341)

**Conspiracy against rights:**
If two or more person conspire to injure, oppress, threaten, or intimidate any people in any State, Territory, Commonwealth, Possession, Land, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or the laws decreed by the people, or because of his having so exercised the same; or
If two or more persons go in' disguise on the highway, or on the premises of another, and hinder his free exercise or enjoyment of any right or privilege so secured –
They shall be fined under this law or imprisoned not more than ten years, or both; and if such acts include kidnapping or an attempt to kidnap, or an attempt to kill, they shall be fined under this law and or imprisoned for any term of years or for life, or both, or may be sentenced to death.

**Deprivation of rights under color of law:**
Whoever, under color of law, statute, ordinance, regulation, or custom, willfully subjects any people or person in any State, Territory, Commonwealth, Land, Possession, or District to the deprivation of any rights, privileges, or immunities, secured or protected by the Constitution or laws of the United States, or the laws decreed by the people, shall be fined under this law or imprisoned not more than five years, or both;  and if bodily injury results from acts committed in violation of this law, includes the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this law and or imprisoned not more than ten years or both;  and if an attempt to kill is made shall be imprisoned for any term of years or for life, or be sentenced to death.

**ABOLISHMENT OF A STATE OF EMERGENCY:**
The state of emergency declared by President Abraham Lincoln in the year 1861 and subsequently continued by every president after him, in one form or another, by their own declaration of a state of emergency, or their failure to declare the original said state of emergency at an end, is heretofore now decreed, declared, and ordained at an end, and is now and forever of no more force or effect regarding the rights, powers, position, dignity, and condition of the United States of America, and the People of the United States, furthermore the People of the United States are to be fully returned, and restored to their former state before said emergency was declared, forever abolishing the perpetual

38-48                    HABEAS CORPUS – ATTACHMENT "A"

state of marshal law and the use of military courts against the People and their estates, and forever abolishing, repealing, and extinguishing every act, law, code, statute, ordinance, treaty, and executive order that has been based, in whole or in part, upon the declarations, or the executive orders of the aforementioned said states of emergency.

**MAGNA CARTA:**
But if the heir of any of the above persons shall be under age and in wardship, when he comes of age he shall have his inheritance without relief and without fine. [Maga Carta, Article 3]

The administrator of the land of such heir who shall be under age shall take none but reasonable issues from the land of the heir, and reasonable customs and services; and this without destruction and waste of men or goods. And if we shall have committed the custody of any such land to the sheriff or to any other man who ought to be responsible to us for the issues of it, and he cause destruction or waste to what is in his charge: we will fine him, and the land shall be handed over to two lawful and discreet men of that fee who shall answer to us, or to him to whom we shall have referred them, regarding those issues. And if we shall have given or sold to any one the custody of any such land, and he shall have caused destruction or waste to it,--he shall lose that custody, and it shall be given to two lawful and discreet men of that fee, who likewise shall answer to us, as has been explained.  [Magna Carta, Article 4]

The administrator, moreover, so long as he may have the custody of the land, shall keep in order, from the issues of that land, the houses, parks, warrens, lakes, mills, and other things pertaining to it. And he shall restore to the heir when he comes to full age, his whole land stocked with ploughs and wainnages, according as the time of the wainnage requires and the issues of the land will reasonably permit.  [Magna Carta, Article 5]

A freeman shall only be amerced for a small offence according to the measure of that offence. And for a great offence he shall be amerced according to the magnitude of the offence, saving his contenement; and a merchant, in the same way, saving his merchandize. And a villein, in the

39-48                    HABEAS CORPUS - ATTACHMENT "A"

same way, if he fall under our mercy, shall be amerced saving his wainnage. And none of the aforesaid fines shall be imposed save upon oath of upright men from the neighbourhood. [Magna Carta, Article 20]

Earls and barons shall not be amerced save through their peers, and only according to the measure of the offence. [Magna Carta, Article 21]

No sheriff, constable, coroners, or other bailiffs of ours shall hold the pleas of our crown.  [Magna Carta, Article 24]

No sheriff nor bailiff of ours, nor any one else, shall take the horses or carts of any freeman for transport, unless by the will of that freeman.  [Magna Carta, Article 30]

Henceforth the writ which is called Praecipe shall not be served on any one for any holding so as to cause a free man to lose his court.  [Magna Carta, Article 34]

Henceforth nothing shall be given or taken for a writ of inquest in a matter concerning life or limb; but it shall be conceded gratis, and shall not be denied.  [Magna Carta, Article 36]

No Bailiff, for the future, shall put any man to his law, upon his own simple affirmation, without credible witnesses produced for the purpose. [Magna Carta, Artical 38]

No freeman shall be taken, or imprisoned, or disseized, or outlawed, or exiled, or in any way harmed, nor will we go upon or send upon him, save by the lawful judgment of his peers or by the law of the land. [Magna Carta, Article 39]

To none will we sell, to none deny or delay, right or justice.  [Magna Carta, Article 40]

We will not make Justiciaries, Constables, Sheriffs, or Bailiffs, excepting of such as know the laws of the land, and are well disposed to observe them. [Magna Carta, Artical 45]

If anyone shall have been disseized by us, or removed, without a legal sentence of his peers, from his lands,

40-48                     HABEAS CORPUS - ATTACHMENT "A"

castles, liberties or lawful right, we shall straightway restore them to him. And if a dispute shall arise concerning this matter it shall be settled according to the judgment of the twenty-five barons who are mentioned below as sureties for the peace. But with regard to all those things of which any one was, by king Henry our father or king Richard our brother, disseized or dispossessed without legal judgement of his peers, which we have in our hand or which others hold, and for which we ought to give a guarantee: We shall have respite until the common term for crusaders. Except with regard to those concerning which a plea was moved, or an inquest made by our order, before we took the cross. But when we return from our pilgrimage, or if, by chance, we desist from our pilgrimage, we shall straightway then show full justice regarding them.  [Magna Carta, Article 52]

All fines imposed by us unjustly and contrary to the law of the land, and all amercaments made unjustly and contrary to the law of the land, shall be altogether remitted, or it shall be done with regard to them according to the judgment of the twenty five barons mentioned below as sureties for the peace, or according to the judgment of the majority of them together with the aforesaid Stephen archbishop of Canterbury, if he can be present, and with others whom he may wish to associate with himself for this purpose. And if he can not be present, the affair shall nevertheless proceed without him; in such way that, if one or more of the said twenty five barons shall be concerned in a similar complaint, they shall be removed as to this particular decision, and in their place, for this purpose alone, others shall be substituted who shall be chosen and sworn by the remainder of those twenty five.  [Magna Carta, Article 55]

...our justices, sheriffs, mayors, and other ministers, which under us have the laws of our land to guide, shall allow the said charters pleaded before them in judgment in all their points, that is to wit, the Great Charter as the common law.... [Confirmatio Cartarum, November 5, 1297, in Sources of Our Liberties, Edited by Richard L. Perry, American Bar Foundation].

**MAXIMS OF LAW:**

41-48                    HABEAS CORPUS – ATTACHMENT, "A"

"An action is not given to one who is not injured" Actio non datur non damnificato. Maxim of Law. See Black, Law. Dict. 10th page 1898.

"A court of Admiralty has no jurisdiction over those things that are determined by common law." Admiralitas jurisdictionem non habet super iis quae communi lege dirimuntur. Maxim of Law. See Black, Law. Dict. 10th page 1899.

"An ecclesiastical court has no jurisdiction over matters of common law." Curia ecclesiastica locum non habet super iis quae juris sunt communis. Maxim of Law. See Black, Law. Dict. 10th page 1907

"Power that is derived cannot be greater than that from which it is derived" Derivativa potestas non postest esse major primitiva. Maxim of Law. See Black, Law. Dict. 10th page 1908.

"A deception practiced on one person does not give a cause of action to another." Alterius circumventio alii non praebet actionem. Maxim of Law. See Black, Law. Dict. 10th page 1900.

"The body of a human can have no price put on it." Corpus humanum non recipit aestimationem. Maxim of Law. See Black, Law. Dict. 10th

"An agreement induced by fraud will not stand." Dolo malo pactum se non seraturum. Maxim of Law. See Black, Law. Dict. 10th page 1909.

"The mind of the sovereign is presumed to be the same as that of the law, and the same as what ought to be, especially in ambiguous matters." Eadem mens Praesumitur Regis quae est juris et quae esse debet, praesertim in duiis. Maxim of Law. See Black, Law. Dict. 10th page 1910.

"No action arises out of a wrongful consideration." Ex turpi causa non oritur actio. Maxim of Law. See Black, Law. Dict. 10th page 1913.

"Fiction yields to truth; where the truth appears, there is no fiction of law." Fictio cedit veritati; fictio juris non est ubi veritas. Maxim of Law. See Black, Law. Dict. 10th page 1914

"Where truth is, fiction of law does not exist." Fictio juris non est ube veritas. Maxim of Law. See Black, Law. Dict. 10th page 1914.

"It is fraud to conceal a fraud." Fraus est cleare fraudem. Maxim of Law. See Black, Law. Dict. 10th page 1915.

"Inheritance is the succession to every right possessed by the late possessor." Haereditas est successio in universum

42-48                    HABEAS CORPUS - ATTACHMENT "A"

.jus quod defunctus habuerat. Maxim of Law. See Black, Law. Dict. 10th page 1916

"A man shall not be punished for suing out writs in the king's court, whether the person is right or wrong."  Home ne sera puny pur suer des briefes en court le roy, soit il a droit ou a tort. Maxim of Law. See Black, Law. Dict. 10th page 1917.

" 'man' (homo) is a term of nature; 'person' (persona) is a term of civil law."  Homo vocabulum est naturae;  persona juris civilis. Maxim of Law. See Black, Law. Dict. 10th page 1917.

"In the presence of the superior, the power of the inferior ceases."  In praesentia majoris cessat potentia minoris. Maxim of Law. See Black, Law. Dict. 10th page 1921.

"It is in the interest of the republic that people should be protected."  Interest reipublicae quod hominess conserventur. Maxim of Law. See Black, Law. Dict. 10Th 1922.

"The rights of blood (or kinship) cannot be destroyed by any civil law."  Jura sanguinis nullo jure civili dirimi possunt. Maxim of Law. See Black, Law. Dict. 10th page 1924.

"It is safe not to obey a person who has no right."  Jus non habenti tute non paretur. Maxim of Law. See Black, Law. Dict. 10th page 1925.

"The law favors a man's inheritance."  La ley favour l'inheritance d'un home. Maxim of Law. See Black, Law. Dict. 10th page 1925.

"Necessity makes lawful what otherwise is unlawful." Necessitas facit licitum quod alias non est licitum. Maxim of Law. See Black, Law. Dict. 10th page 1932.

"Necessity has no law."  Necessitas non habet legem. Maxim of Law. See Black, Law. Dict. 10th page 1932

"Where blood has been spilled, the case is unpardonable." Nec veniam effuso sanguine casus habet. Maxim of Law. See Black, Law. Dict. 10th page 1932.

"A man who exercises his own rights injures no one." Neminem laedit qui jure suo utitur. Maxim of Law. See Black, Law. Dict. 10th page 1933.

"No one can be dragged (taken by force) from his own house."  Nemo de domo suq extrahi potest. Maxim of Law. See Black, Law. Dict. 10th page 1933.

"What is void in the beginning does not become valid by passage of time."  Quod initio non valet, tractu temporis non valet. Maxim of Law. See Black, Law. Dict. 10th page 1953.

43-48                    HABEAS CORPUS - ATTACHMENT "A"

"Persons taken by pirates or robbers remain free." A piratis out latronibus capti liberi permanent. See Black, Law. Dict. 10th page 1953. Maxim of Law.
"Things taken or captured by pirates and robbers do not change their ownership." A piratis et latronibus oapta dominium non mutant. See Maxim of Law. Black, Law. Dict. 10th page 1953.
"Ignorantia juris sui non praejudicat juri."   Ignorance of one's right does not prejudice ·the right.   See Black's Law Dictionary, page: 873, 5th, Ed. (1979) Maxim of Law.


**SEAL:**
The seal of this Superior Court of Record shall be the great seal of the House of Dixon;  this seal is the property of the Paterfamilias of the House of Dixon and his Heirs and assigns forever.  Any use of this seal without the express written consent of the Paterfamilias of the House of Dixon or his heirs and assigns, in any form, carries with it the penalty of death.

The seal of this court shall be affixed to instruments by the hand of the sovereign of this court, or a Special Master in good standing with this court, by drawing said seal onto said instruments or by crimping the instruments with the embossed seal of the court.
Directly below, to the right of the word Seal, is the image of the great seal of the House of Nelson, crimped with embosser or drawn by hand, and is to be recognized as such, by all who see it, regardless of minor changes in style from one hand to another who are authorized to draw and use it.


Seal:


**RULES OF PROCEDURE:  writs;**
The rules of procedure for writs emanating from this court are as follows:
CONTENTS;  AMENDMENTS


44-48             HABEAS CORPUS - ATTACHMENT "A"

Contents. A writ must:
Name the court or sovereign from which it emanates;
Name the parties;
Give a list of commands to the ministerial / executive
officer who is to execute them, and when he is to execute
them or under what contingency he is to execute them; this
list may be within the writ or attached to it;
State the name and address of the plaintiff and / or
prosecutor;
notify the defendant that failure to appear and defend, in
a way consistent with law, will result in a default
judgment against the defendant for the relief demanded
within the writ or accompanying complaint, claim,
declaration, or action;
If judicial;
Be signed by a judge, magistrate, master, magistrate judge,
special master, or sovereign of this court;
Bear the court's seal;
If original;
Be signed and attested by the sovereign and bear his seal;
If prerogative;
Be signed and attested by the sovereign of the state, bear
the seal of the court, and run in the name of the sovereign
of the state;
Be attested to;
Be directed to the defendant, or wrongdoer depending on the
type of writ;
Have an endorsement on the back of the writ if it is a writ
in the nature of a writ of execution;
Contain the description of the judgment, which discloses
the authority to issue it.

Amendments. The court may permit a writ issued by the
plaintiff to be amended in part or in its entirety.

ISSUANCE.
On or after signing of the teste and the sealing of the
writ by the plaintiff, and /or the Special Master, and /or
other designated officer of the court, one may present the
writ to the clerk for signature and file stamp. If the
writ is properly completed, the clerk shall sign, file-
stamp, and if required by the plaintiff, Special Master,
or other designated officer, deliver the writ to the
appropriate ministerial / executive officer, stated in the
writ, for execution, and/ or service, according to the

45-48             HABEAS CORPUS - ATTACHMENT "A"

commands stated therein to the appropriate party or parties stated in the writ.

ENDORSEMENT.
After the writ has been issued from the court or the sovereign, the writ shall have an endorsement on the back in the amount certain to be collected with any other interest or other moneys added in, to be expressed in figures, i.e., $10,000.00, it shall state any credits, the items of costs and charges, the dates of interest, and contain the true demand of the plaintiff, with the exact specification of the amount the defendant is to pay.  The endorsement must also state the names of the defendants who will have the amount claimed from them.

Example:  Plaintiff John Doe is to collect from Mary Roe $35,000.00 and one red snow blower.
                                        _[signed by John Doe]_
Plaintiff John Doe

Example:  The Superior court claims all records from B. Smith & Company regarding the sale of one 2010 green Dodge truck.
                                        __[signed by Jay Ball]__
Plaintiff Jay Ball

Example:  The Plaintiff Dan Smith is to be restored to freedom forthwith and be given return of all bond moneys from Case #'s 52 – 36 – 47 in the amount of $35,000.00 from the Sheriff or bondsman of Door County Jail.
Tim Roberts  __[signed by Tim Roberts]__
                                        Special Master

SERVICE;  EXECUTION.

46-48               HABEAS CORPUS – ATTACHMENT "A"

Service.  Those authorized to serve writs shall be:
1. The sheriff of the county where the defendant and/ or
the defendant's property is to be found;
2. Marshals of the court of record on file with the court
and in good standing with the court;
3. United States marshals in good standing with the court;
4. united states marshals in good standing with the court;
5. Coroners of the county where the defendant or the
defendant's property is to be found if the sheriff of the
county is a party to the suit or writ and therefore
disqualified to serve.
6. Any individual who has come of full age not a party to
or interested in the proceedings in which the writ issued.

Service.  When the officer shall serve:
On or before the return day stated on the writ.

Execution:  It shall be the duty of any officer, or other,
authorized to serve writs from this court, upon being
presented with a writ from this court, either given to him
by hand, or placed in his office, or transmitted to him for
the purpose of being executed, that is in compliance with
the rules of procedure of this court concerning writs as so
stated in the Law of the Case, with the full power of this
court to shield said officer from liability from the
defendant, to execute the commands within the writ without
condition, within the time allowed, or upon any contingency
stated therein, promptly and vigorously.

RETURN.  The officer to whom a writ has been committed, and
who has executed its commands, is then bound by duty to
return it,  by which is meant that he must write upon the
writ, or a paper thereto attached, a statement, sworn to
under oath, of his acts done in pursuance of its mandate;
and deliver it again to the court, through its clerk,
special master, or directly to the plaintiff if so
commanded.  Whatever it is necessary for the officer to do
to effectually execute the writ committed to him must show
in the return to have been done;  if it not be done, he
must give reason as to why.

Contents.  A return must:
State the date and time the commands were executed, or were
attempted to be executed;
State the name or names of the officer or officers who
executed the writ;

47-48                 HABEAS CORPUS - ATTACHMENT "A"

Name the party the officer served the writ to;
Name the location where the officer executed the commands
of the writ;
State what the actions of the officer were in the execution
of the commands within the writ;
Contain an oath of the officer that all that he has been
commanded to do has been done, or has not been done, and
for what reason it was not done, and that all that he
states within the return be true upon his or her oath;
Contain the signature of the officer, and his seal if he
has one, or the seal of his office if the officer who
executed the orders of the writ did so in his official
capacity.

48-48                  HABEAS CORPUS - ATTACHMENT "A"

**\*369952\***

369952    5/21/2018 10:54 AM    Melanie Woodward
1 of 11    R$63.00  D$0.00    Alamosa Cnty Clerk

On and for the Public and Private
record, and for the court of record
of the House of Nelson;
Inthematterof;
Brett Andrew Nelson;
BRETT ANDREW NELSON;
aka all other derivative names and
spellings thereof;
By Absolute Exor. Brett-Andrew:
House of Nelson. Non-post
location
15050 Lane 6N Mosca Co
[81146]

**Lawful claim of title, will, execution of will, declaration of status & appointment and standing orders for the trustees:**

Case№:For All cases regarding Brett Andrew Nelson, aka all other derivative names and spellings thereof, BRETT ANDREW NELSON, and BRETT A. NELSON.

---

Date: 5/21/2018

### Lawful claim of title, will, execution of will, declaration of status & appointment and standing orders for the trustees:

COMES NOW Brett-Andrew; of the House of Nelson, a man, having been found to be living, having come of full age, a living soul manifest, one of the People of Colorado, legitimate son of marred parents, donor, grantor, settlor, testator, sole lawfully appointed absolute executor, and sole lawful Heir of both the Brett Andrew Nelson; BRETT ANDREW NELSON; aka all other derivative names and spellings thereof absolute legal Estate and the Brett A. Nelson; BRETT A. NELSON; aka all other derivative names and spellings thereof trust, (hereinafter "Claimant") and executes the following of Claimant's own free will, act, and deed; This entire document is a lawful Claim, Deed, Will, Execution of Will, and Appointment under seal bearing consideration over twenty (20) dollars, (hereinafter "Claim") the attached document bears an Endorsement from Claimant regarding Estate property; Claimant declares, executes, admits, testes, appoints, and

Lawful claim of title, will, execution of will, declaration of status & appointment and standing orders for the trustees:Page 1 of 9

Melanie Woodward
Alamosa Cnty Clerk

*369952*

5/21/2018 10:54 AM
R$63.00 D$0.00

369952
2 of 11

claims, on and for the public and private record, under penalty of perjury, the forgoing and the following;

1) Claimant demands that all others immediately come forward and state a superior claim, under oath and affirmation, against both the Brett Andrew Nelson; BRETT ANDREW NELSON, aka all other derivative names and spellings thereoflegal Estate (herein "Estate") and the Brett A. Nelson; BRETT A. NELSON, aka all other derivative names and spellings thereof trust (herein "Trust") or forever let go and lose any hold or claim over same;

   a) Claimant, the Estate, and the Trust, are three separate and unique entities; Claimant being a living man, and one of the People of Colorado, and the other two being constructs of law; fictions; non living entities; It is hereby admitted, on and for the record, that neither the Estate nor the Trust can, nor can ever be, joined in anyway shape or form with Claimant, as this would be a violation of the law of kind. Claimant does not consent to, will not consent to, and cannot assume any liability for any charges whatsoeverfor eitherthe Estate or the Trust, or stand under any claims wheretofore, because Claimant is not the trustee for either of these fictions of law, nor has Claimant ever knowingly given consent to be so, nor will he ever consent to be so; nor does Claimant consent to be bound by any hidden or unrevealed contracts, pledges, trusts, bonds, or oaths regarding the Estate or the Trust;

   b) Claimant has come to/of full age on September third, nineteen ninety-eight and is of sound mind and judgment;

   c) Claimant is the sole lawful living Heir of the Estate, and the Trust which is the beneficiary of the social security account numbered 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;

   d) Claimant hereby instantly and irrevocably exercises Claimant's birthright, as sole lawful living Heir who has come to full age, stands upon this Claim, and claims Claimant's entire inheritance, rebuts any presumption of death or abandonment regarding the Estate or Trust, and claims ownership of everything that belongs to, or is being held in the name of the Estate and the Trust, and irrevocably appoints Claimant as sole lawful Executor to same for life. Claimant NOW, by Executive Order, forgives, discharges, annuls, terminates, and disavows any charge, libel, lien, appropriation, accusation, debt, policy, or bill against, toward, and regarding, the Estate or Trust by any Trustee or third party, *nunc protunc, et usque ad finem temporis*, and orders all trustees, named and appointed herein, to do the same regarding the Estate and Trust, the specific orders in 1,d) do not require the trustees to post the bond stated in section 1,f) (2) below nor be indemnified for same;

   e) Claimant hereby revokes any presumed or actual authority of the trustees enumerated in i through xxviii below, and any other third party whatsoever, to administrate anything stated in List below regarding the Estate or the Trust, and any other thing thereto belonging, on behalf of, or for, Claimant in any capacity in any jurisdiction, or see, for any reason whatsoever, forever; The express instructions and orders from Claimant to the trustees listed in this Claim are excluded, as are any further or past instructions or orders that Claimant expressly gives, had given, or will give to the trustees, or other third party, that

Lawful claim of title, will; execution of will, declaration of status & appointment and standing orders for the trustees: Page 2 of 9

Melanie Woodward
Alamosa Cnty Clerk

*369952*

5/21/2018 10:54 AM
R.$63.00 D.$0.00

369952
3 of 11

bear both Claimant's seal and signature which are both affixed below;

f) Claimant, by common law, natural law, the rights of blood and kinship, by the powers of appointment act of 1951, and [Title 26 USC 2514 (b)(d)] hereby irrevocably appoint the following, enumerated in i through xxviii below, as trustees of the Estate and the Trust and requires that they now carry out and execute all standing and future Executive Orders, and instructions from Claimant, bearing the signature and seal of same, regarding everything stated in List below regarding the Estate and the Trust. Acceptance of this trustee appointment will be binding upon said appointed trustee(s) if the following occur: (1) If any of the following listed appointed trustees administers anything regarding the Estate or the Trust, without the express written consent of Claimant, bearing the Seal of Claimant, which is affixed to the bottom right hand corner of page nine of Claim, or acts contrary to, or exceeds, the standing orders listed herein, or, (2) Posts a bond in the amount of Six Hundred millions of dollars in lawful consideration to indemnify Claimant for any loss, mismanagement, or malfeasance of anything stated in List regarding the Estate or Trust, send a signed and sealed covenant of acceptance to Claimant accepting their appointment as trustee of the Estate and Trust, with proof of the posting of said bond, including the requisite information needed to place a claim on said bond if fiduciary malfeasance or fraud is perpetuated by the trustee(s), mailed to Claimant, at the address listed above within ninety (90) days from having notice of Claim or upon notice of the existence of Claim, however no administration of anything stated in List regarding the Estate and Trust, by the appointed trustees herein, or any third party whatever, shall have any lawful force or effect upon same until said bond is posted by said trustees as stated herein and properly acknowledged by Claimant;

g) Any administration of anything stated in List below regarding the Estate or Trust by any appointed trustee(s), enumerated in i through xxviii below, or any other third party whatsoever, will be their binding agreement of acceptance of this appointment as trustee as stated herein, and upon their binding actions of administration regarding anything stated in List below, trustees agree to immediately post a bond in accordance with 1) f)(2) above with all haste or instantly be bound to indemnify Claimant for the same amount and kind. Any administration of anything in List, regarding the Estate or Trust, that exceeds the orders from Claimant, regarding the Estate or Trust will, by tacit procuration of the trustees appointed herein, be prosecuted in a court of record in accordance with the common law, as a trespass, trespass on the case, and or any other applicable action in law, in which case Claimant will demand damages in the amount agreed to by said trustee(s) in 1) f) (2) above and or be seen and prosecuted in a court of record as common law theft punishable by DEATH, and if said attempt to administer is accompanied by force or whilst brandishing a deadly weapon it will be seen as a direct act of war against a sovereign state and be repelled in kind without further warning;

i) All Courts, corporate or otherwise;

Lawful claim of title, will, execution of will, declaration of status & appointment and standing orders for the trustees: Page 3 of 9

Melanie Woodward
Alamosa Cnty Clerk

"369952"*
5/21/2018 10:54 AM
R$63.00  D$0.00

369952
4 of 11

ii)  THE STATE OF COLORADO; all fifty States in the Union;

iii)  UNITED NATIONS; U.N.;

iv)  UNITED STATES;

v)  United States;

vi)  United States of America;

vii)  THE DISTRICT OF COLUMBIA;The District of Columbia; ALL incorporated and unincorporated Governments;

viii)  All branches of the Military;

ix)  All incorporated and unincorporated Cities, Townships, States, states, STATES, Hamlets, Counties, COUNTIES, Towns, Villages, Parishes, Manors and Enclaves;

x)  All Police Departments; All law enforcement agencies, INTERPOL;

xi)  All SHERIFFS;Sheriffs; All SHERIFF'S DEPARTMENTS/OFFICES; All Coroners;

xii)  All Public Utility Companies;

xiii)  All Chartered Corporations;

xiv)  All B.A.R. associations;The Temple Bar;THE TEMPLE BAR;

xv)  AllBonding and Holding companies; ALL BONDING AND HOLDING COMPANIES;

xvi)  All Trust Companies; ALL TRUST COMPANIES;All Saving and Loan companies; All Title Companies; Cede & Co;

xvii)  The Depository Trust & Clearing Corporation (DTCC);

xviii)  All incorporated or unincorporated Banks; All Financial Service Companies; All Debt collection agencies; All Credit Unions; All Credit Reporting Agencies;

xix)  The INTERNATIONAL MONETARY FUND;the I.M.F.;THE WORLD BANK; THE BANK OF INTERNATIONAL SETTLEMENTS; THE FEDERAL RESERVE; The Federal Reserve System;

xx)  The Internal Revenue Service; The I.R.S;.The SOCIAL SECURITY ADMINISTRATION; The Social Security Administration;

xxi)  THE UNITED STATES DEPARTMENT OF THE TREASURY; THE UNITED STATES TREASURY DEPARTMENT; THE DEPARTMENT OF THE TREASURY; The Department of the Treasury;Department of the Treasury; (USDT);

xxii)  All Intelligence Agencies and Organizations; C.I.A.; N.S.A.;F.B.I.; MI6; GCHQ; Mossad;

xxiii)  The United States marshal service;

xxiv)  The President of the United States of America; the President of the UNITED STATES;

xxv)  The Vatican; the Bishop of Rome;THE HOLY SEE; All Apostolic Sees;The Roman Curia; All churches, priests, cardinals, bishops, pastors, deacons, and servants of the same;

xxvi)  ALL Emperor(s), King(s), Sultan(s), Queen(s), Prince(s), Princess(es), Elector(s), Viceroy(s), Marchioness(s), Marquises(s), Count(s), Viscount(s), Archduke(s), Principalities, Baron(s), Baroness(s), Margraves, Duke(s), Sir(s), Earl(s), Dame(s), Patrician(s), Knight(s), Esquire(s) and Sir(s);

xxvii)  ALL established Houses of all civilizations and cultures;

xxviii)  and all the respective subsidiaries, franchises, relations, divisions, departments, counties, cities, townships, agencies, bureaus, federations, confederations, employees, presidents, administrators, administrations, executors, trustees,secretariats, secretaries,

Lawful claim of title, will, execution of will, declaration of status & appointment and standing orders for the trustees:Page **4** of **9**

Melanie Woodward
Alamosa Cnty Clerk

*369952*

5/21/2018 10.54 AM
R$63.00 D$0.00

369952
5 of 11

principals,ministries, rectors, agents, offices, governors, attorneys, masters, registrars, stewards,wardens, councils, committees, generals, treasurers, servants, men, women, officers,managers, delegates, supervisors, boards, comities, judges, associate judges, district judges, federal judges, mayors, clerks, dicasteries, magistrates, affiliates, successors, stockholders, congregations, personnel, retirees, contractors, sub-contractors, assigns, and representatives of everything listed and enumerated in i through xxvii above, in all places where they may be found or located, as if listed completely herein. Claimant is none of these listed in i through xxviii above.

**Standing orders for the trustees named herein, and all third parties:**

2) Claimant, by Executive Order, hereby orders the aforementioned trustees to perform the following actions, listed in a-g below, immediately;

a) The trustees are to provide to Claimant all of the original records pertaining to all matters that they have ever held or now hold regarding the Estate and Trust at the address below at their expense, or send written notice to Claimant at the address below that said records have been previously sent to Claimant at another address and state the same to Claimant in writing. This court, STATE OF COLORADO 7TH JUDICIAL DISTRICT COURT GUNNISON COUNTY, and all officers thereof, as first trustee, are to inform and notice all other trustees of this Claim, in writing, provide them with a copy of this Claim, and shall do so immediately and with all haste;

b) The trustees are to immediately prepare and deliver to Claimant a full forensic accounting and audit of everything listed in (2)(c) below in List, of which they or their respective organizations hold or are aware of, regarding both the Estate and the Trust, within ninety (90) days from their acceptance of said appointment as trustee, or by their binding actions, which will be their total and complete irrevocable binding agreement to said appointment as trustee as stated herein;

c) The trustees, upon Claimant's authority, are to account, for the originals thereof, the following; assets and liabilities, positive and negative, active and passive, owed to and owed from, direct and indirect, corporal and incorporeal, possessory and non-possessory, real and personal, tangible and intangible, clean and fouled, enumerated and un-enumerated, actual and constructive, liquid, future, hypothecary, and doubtful regarding the Estate and the Trust: Anybond, duty, duties, debt, contract, donation, patent, distraint, claim, conveyance, custom, bill, bill of lading,lading, unlading, bargain, article, interest, obligation, consignment, franchise, land, real estate, real property, navigation, chattel, credit, document, thing, shipment, promise, property, Cestui Que Vie trust,Cestui Que trust, pledge, novation, encumbrance, token, ware, good, advance, control, disposition, sale,clearance, declaration, mortgage, tax, lien, letter, schedule, factor, abstract, energy, life, commodity, money of exchange, money of account, liability, pawn, pignus, hypothecation, treaty, legacy, antichresis, body, check, judgement, cargo, salvage, vessel, order,issue, entry, drawback, action,opinion, right, recommendation, merchandise, statement, currency, affidavit,

Melanie Woodward
Alamosa Cnty Clerk

*369952*

5/21/2018 10.54 AM
R$63.00 D$0.00

369952
6 of 11

receipt, crypto currency, exhortation, requisition, gift, assignment, appropriation, constitution, deputation, share, decree, covenant, title, paper, effect, soul, mandate, appraisal, prohibition, will, children, warranty, attachment, hold, copy, copyright, custody, skip, transaction, information, reservation, privilege, suit, prescription, responsibility, administration, management, term, and condition for all persons, People, property, men, women, animals, and sureties for any Estate or Trust related performance or burden for... Claimant, and are to account for all res, balance, remainder, or reversion, including, but not limited to, any subject, matter, issue, person, character, instrument, deed, will, title, paper, consideration, trust, interest, credit, gift, stock, bond, bill, grant, transaction, certificate, benefit, insurance, policy, account, covenant, security, deposit, loan, pension, fund, or retirement plan- be it dispositive, appointive, nominative, or other, regarding the Estate and the Trust, and regarding all other estates and trusts that Claimant be heir to (herein "List") and shall consolidate, merge, settle, and convert everything of a financial nature stated in List into lawful consideration, IE money of exchange, gold or silver, or backed thereby, and place same as a special deposit into a special treasury account for the House of Nelson, which shall be a safe deposit box in a bank or trust company located in Gunnison County Colorado, which Claimant will have absolute and sole control over for life, with transferable power of appointment, provide Claimant with the means necessary to access said account and safe deposit box, which the trustees shall have the right to open and establish, deposit into, but not withdraw from, and deliver/satisfy livery of seisin to Claimant any other physical, corporal, and incorporeal objects, things, titles, lands, issues, bodies, rights, immunities, souls, effects, papers, and the like, not of a financial nature, stated in List without delay, the situs of same shall forever be the House of Nelson, and shall correct their records, both public and private, to reveal this transfer, accounting and settlement of same, for and to, Claimant and his House;

d) The trustees are to now perform a full forensic audit on, and account for, any lawful taxes owed regarding everything stated in List, upon proof of claim from a constitutionally created body or law that a constitutional tax is owed according to the Constitution for the united States of America, or the constitution of Colorado, list said taxes due in a full forensic audit of everything stated in List, and describe to Claimant the form of payment required to be paid and the entity or entities to which said tax is payable and owed, and state the address of the entity, man, or woman, that accepts the said taxes, so that Claimant may pay said taxes, if any taxes are proved to be owed to the entity, man, or woman so claiming, and mail the aforesaid to Claimant at the address above within ninety (90) days of your acceptance of appointment as trustee, along with the information necessary to access the aforementioned consolidated merged and specially deposited List in the aforementioned special treasury account;

e) The trustees named, and listed in i through xxviii, are expressly forbidden from acting in or on the behalf of the Estate and the Trust in any past, present or future matter whatsoever without first obtaining the express written consent of Claimant, that bears the Seal of

Lawful claim of title, will, execution of will, declaration of status & appointment and standing orders for the trustees: Page 6 of 9

Melanie Woodward
Alamosa Cnty Clerk

*369952*

5/21/2018 10:54 AM
R$63.00 D$0 00

369952
7 of 11

Claimant, which is affixed to Claim, below, to the right of the word Seal, and are hereby and henceforth, by Executive Order, ordered to cease and desist any such activity immediately forever; The specific orders contained within this Claim are excluded, as are any past, future, or standing orders from Claimant which bear the same Seal as below affixed, which is the Seal of the House of Nelson, the Seal of said Estate, and the Seal of Claimant's court; The trustees SHALL-NOT disrupt any currently provided utility which Claimant now enjoys; Claimant specifically objects to any actions taken by the trustees that are contrary to the orders which bear Claimant's said seal; The trustees, and all others who read, or have knowledge of this Claim, agree that all words in this Claim are as the Claimant understands them, and that Claimant is the final tribunal and judge as to what does and what does not belong to the Estate and Trust named in List, and all other estates and trusts that Claimant is heir to;

f) If the trustees require anything from Claimant in order, other than what is decreed, stated, and ordered herein, to accomplish, fulfil and carry out any order stated herein, it is the wish of Claimant that the trustees contact Claimant, at the address given below, with a written statement, of what they need or require to accomplish all that is decreed, stated, and ordered herein, and it is the wish of Claimant that the trustees do so within sixty (60) days from having knowledge of this Claim;

g) 10% of the entire net Estate and Trust shall be set aside, converted into Lawful consideration, before payment, and shall be equally distributed to the following trustees who prove, to the satisfaction of Claimant, that they have fulfilled the orders stated herein, and all other orders, under the seal of Claimant, that are required to have settlement and livery of seisin of the entire gross Estate and settlement and or termination of the Trust as stated herein. Said trustees are to keep proper records of all transactions of the Estate and Trust and are to keep proper records of all actions they take in regards to the Estate and Trust, and deliver to Claimant those said records as part of the proof of the trustees fulfilling the said orders of Claimant for the said reasons in order to receive said distribution.

## Conclusion

Claimant's life depends upon everything stated in List regarding the Estate and Trust. The noble goal and actions of Claimant by coming upon this Lawful claim of title, will, execution of will, declaration of status & appointment and standing orders for the trustees,(Claim) is to settle the entire gross Estate for Claimant, and any other estate which Claimant be heir to, have satisfaction and recovery of livery of seisin of same, and to settle, or revoke, or terminate the Trust, and any other trust regarding the Estate, and to return Claimant and the Estate to their proper state of dignity as soon as can be accomplished, for the betterment of Claimant so that no further

Melanie Woodward
Alamosa Cnty Clerk

5/21/2018 10:54 AM
R$63.00  D$0.00

369952
8 of 11

unwanted administration of the Estate, Trust or Claimant occur at any time. Claimant has been made aware of fiduciary malfeasance, fraud, mismanagement, unlawful arrest, common law theft, human trafficking, corruption, moral depravity, destruction of the Claimant's rights of blood and kinship, unlawful enrichment, and all other manor of unlawful behavior, regarding the Estate and Trust, by known and unknown men, woman, and actors, regarding everything stated in List as it pertains to the Estate and Trust, Therefor; That whenever any Form of Government, or relation becomes criminal and destructive to this extent, it is the Right of Claimant, as one of the People of his respective state, to alter or to abolish it; Claimant finds it necessary for Claimant's life to solemnly declare, decree and publish everything stated herein, upon the public and private record, to a candid world, so that these  protections, appointments, claims, orders and agreements be decreed, created, recorded, and served to the trustees named herein, in a manner that will secure the inalienable Rights of Claimant regarding all that is stated in List regarding the Estate and Trust and to secure the same for whatever will be Claimant's private property in the future. Furthermore, Claimant declares, proclaims, and defines that it is absolutely necessary for salvation of Claimant to be subject to only his own law and natural law, and the dictates of his own conscience because Claimant is spiritual in the tradition of the Lakota people, and a Self-Governing People. Furthermore Claimant does not consent to be bound by any revealed or unrevealed contracts, trusts, bonds, laws, documents, codes, cannons, bulls, statutes, ordinances, pledges, oaths, or presumptions that would, deny, contradict, change, diminish, or supersede anything contained herein, and hereby, by Executive Order, wheretofore abolishes, discharges, revokes, disavows and terminates the same *nunc pro tunc, et usque ad finem temporis.*

## WARNING!

If anyone, appointed trustee(s) herein or otherwise, fails to follow the orders stated herein or exceed them in any way regarding said Estate and Trust they agree, by tacit procuration, to be tried as common law thieves, under common and natural law in a court of record, and that said court of record will proceed according to the course of the common law, without statutes, equity, or any other jurisdiction save common and natural law. Any administration of anything in List, regarding the Estate or Trust, that exceeds the orders from Claimant, regarding the Estate or Trust will, by tacit procuration of the trustees appointed herein, be prosecuted in a court of record in accordance with the common law, as a trespass, trespass on the case, and or any other applicable action in law, in which case Claimant will demand damages in the amount agreed to by said trustee(s) in 1) f) (2) above and or be seen and prosecuted in a court of record as common law theft punishable by DEATH, and if said attempt to administer is accompanied by force or whilst

Lawful claim of title, will, execution of will, declaration of status & appointment and standing orders for the trustees:Page 8 of 9

brandishing a deadly weapon it will be seen as a direct act of war against a sovereign state and be repelled in kind without further warning;

**Witness quorum:**

We, living souls manifest, who are one of the People of our respective states, now bear witness with our own eyes and attest through our own hand, that this Lawful claim of title, will, execution of will, declaration of status & appointment and standing orders for the trustees, (Claim) is the perfect free will writing of Claimant on this twenty-first day of May in the Year Two Thousand Eighteen. Furthermore we, living souls manifest, know Claimant to have been found to be living, that Claimant be of sound mind, judgement and memory, that Claimant has come of full age, and do attest that this is a continuation of Claimant's own free will, act, and deed without any involvement of duress or coercion on the part of anyone against Claimant or ourselves.

LUIS ARIAS            Melanie Garcia

Ton of 12             Melanie Garcia    Roxanne Martin

<u>J u r a t</u>

Authenticated, verified, decreed and executed on this 21 day of May by the hand, and under the Seal of Claimant, by Claimant's sovereign authority as one of the People of Colorado;

Claimant verifies, above the laws of the United States of America, and under the common law, that the forgoing is true and correct and will verify that the same be true; This Claim shall be understood by all men and woman, to whom this Claim may come, as a continuation of Claimant's will, free act and deed.

Document created by:

Brett Andrew House of Nelson

General Delivery

PO Box 22 Mosca (City) Colorado (Republic)

Brett Andrew House of Nelson

Executor - Estate Dignitary – Paterfamilias

One of the People of Colorado

Movant of the Court



Seal:

Lawful claim of title, will, execution of will, declaration of status & appointment and standing orders for the trustees: Page **9** of **9**

Melanie Woodward
Alamosa Cnty Clerk
7C6669
5/21/2018 10:54 AM
R$63.00 D$0.00
369952
9 of 11

369952
10 of 11

5/21/2018 10:54 AM
R$63.00 D$0.00

Melanie Woodward
Alamosa Cnty Clerk

DATE REGISTERED BY STATE REGISTRAR

## STATE OF COLORADO
## CERTIFICATE OF LIVE BIRTH

STATE FILE NUMBER

**CHILD**

| CHILD NAME FIRST | MIDDLE | LAST | SEX | DATE AND HOUR OF BIRTH (MONTH, DAY, YEAR, HOUR) |
|---|---|---|---|---|
| BRETT | ANDREW | NELSON | Male | September 3, 1979 9:00 A.M. |

| HOSPITAL, NAME (If not in hospital give street and number) | CITY, TOWN OR LOCATION OF BIRTH | COUNTY OF BIRTH |
|---|---|---|
| Presbyterian Aurora Hospital | Aurora | Arapahoe |

CERTIFIER – I CERTIFY THAT THE STATED INFORMATION CONCERNING THIS CHILD IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF
(Signature)

D.O., OTHER (SPECIFY)

DATE SIGNED (Month, Day, Year)
9-5-79

| NAME (Type or print) | MAILING ADDRESS (Street or R.F.D. No., City, State, Zip) |
|---|---|
| Dr. D. Harris | 730 Potomac St., Aurora, Colorado 80011 |

REGISTRAR
(Signature) Janice L. Morris, Deputy

DATE RECEIVED BY REGISTRAR (Month, Day, Year)
SEP 28 1979

**PARENTS**

| MOTHER NAME FIRST | MIDDLE | LAST (MAIDEN) | AGE (At time of this birth) | STATE OF BIRTH (If not in U.S.A. name country) |
|---|---|---|---|---|
| Cheryl | Lynne | Remke | 25 | Texas |

| RESIDENCE - STATE | COUNTY | CITY, TOWN OR LOCATION | STREET AND NUMBER | INSIDE CITY LIMITS (Yes or No) |
|---|---|---|---|---|
| Colorado | Arapahoe | Englewood | 7919 S. Vincennes Way | No |

MOTHER'S MAILING ADDRESS
7919 S. Vincennes Way, Englewood, Colorado 80112

| FATHER - NAME FIRST | MIDDLE | LAST | AGE (At time of this birth) | STATE OF BIRTH (If not in U.S.A. name country) |
|---|---|---|---|---|
| Larry | Eugene | Nelson | 25 | Colorado |

I certify that the personal information provided on this certificate is correct to the best of my knowledge and belief.
Signature of Informant: Cheryl Lynne Nelson

RELATION TO CHILD
Mother

### STATE OF COLORADO, TRI-COUNTY DISTRICT HEALTH DEPARTMENT

I hereby certify that the above is a true, full and correct copy of the certificate in my custody and now on file in my office.

Witness my hand and official seal in Englewood, in the County of Arapahoe, in said State, this 3rd day of February A.D. 1984.

H. H. Rohrer, M.D., Resgistrar
Adams, Arapahoe and Douglas Counties

Barbara D. Brungardt, Deputy Resgistrar

PENALTY BY LAW if any person alters, uses attempts to use or furnishes to another for deceptive use or supplies false information for any vital statistics certificate.

**\*369952\***

369952
11 of 11

5/21/2018 10:54 AM
R$63.00  D$0.00

Melanie Woodward
Alamosa Cnty Clerk

Indorsement: Accepted for Full value, Registered to The House of Nelson without Recourse, not transferrable to any Third Party without The Written consent of The Executor.

Brett-Andrew



# PRIORITY®
## ★ MAIL ★

- DATE OF DELIVERY SPECIFIED*
- USPS TRACKING™ INCLUDED*
- INSURANCE INCLUDED*
- PICKUP AVAILABLE
  * Domestic only

FROM: PO Box 22
Mosca CO 81146

TO: U.S District court
901 19th St.
Denver CO 80294

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

UNITED STATES
POSTAL SERVICE®

**USPS TRACKING #**

9114 9014 9645 1364 9937 87

Label 400 Jan 2013
7690-16-000-7948

EP14F July 2013
OD: 12.5 x 9.5

## VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



UNITED STATES
POSTAL SERVICE.

This envelope is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.

# PRIORITY
## ★ MAIL ★



TRACKED*
★ ★ ★
INSURED*
★

## FLAT RATE ENVELOPE
ONE RATE ★ ANY WEIGHT*



PS00001000014

EP14F July 2013
OD: 12.5 x 9.5



UNITED STATES
POSTAL SERVICE®

* Domestic only.    * For International shipments, the maximum weight is 4 lbs.